**Raul VILLARREAL, a/k/a Robert Raul "Bobby" Villarreal, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 13–85–265–CR.**

Court of Appeals of Texas,
Corpus Christi.

Aug. 29, 1986.

Larry Warner, Port Isabel, for appellant.

Ben Euresti, Jr., Cameron Co. Dist. Atty., Brownsville, for appellee.

Before BENAVIDES, UTTER and DORSEY, JJ.

OPINION

BENAVIDES, Justice.

Appellant was convicted of injuring an elderly person. TEX. PENAL CODE

ANN. § 22.04 (Vernon Supp.1986). The trial court assessed punishment at twenty-five years in the Texas Department of Corrections.

In his first ground of error, appellant contends that the State committed fundamental error in calling before the jury Alicia Margarita Martinez, his common-law wife, to testify as a State's rebuttal witness, even though the trial court ruled that she would not be allowed to testify, and did not testify. Appellant relies on the rule of law applied in *Johnigan v. State*, 482 S.W.2d 209 (Tex.Crim.App.1972), that it is reversible error for the State even to call the accused's wife to testify, thereby forcing him to object in the jury's presence and leaving the impression that her testimony would be adverse to him. The basis for the rule of law in *Johnigan* is TEX.CODE CRIM.PROC.ANN. art. 38.11 (Vernon 1979). Article 38.11 disqualifies a spouse, whether ceremonial or common-law, from testifying against the accused (except in specific situations not applicable here).

In the present case, appellant testified in his own defense. He denied committing the offense, stating that he was at home with his wife and friends when the crime occurred. During his testimony, he repeatedly referred to Alicia Martinez as his "wife." Appellant testified on cross-examination that Alicia was his common-law wife. In response to a question from the prosecutor, he testified that he had lived with her for seven months. The State, in its examination of appellant, also made repeated references to Alicia as his "wife," and attempted to show that Alicia's testimony would be different than appellant's. Throughout its examination of appellant, the State appears to have conceded that Alicia was appellant's wife. It was obvious that appellant's wife could substantiate or contradict his alibi defense. After appellant testified, the State called one rebuttal witness and then, also on rebuttal before the jury, called Alicia Margarita Martinez.

Appellant objected, stating that Martinez was his wife.

When Martinez was finally called to testify on rebuttal for the State, a hearing was held out of the jury's presence. There, Martinez testified that appellant was her husband, that she cohabitated with him, that they lived as husband and wife, that outsiders see them as husband and wife, that she has told others that they are husband and wife, that she is appellant's wife, and that they had plans of marrying officially. The trial court ruled that Martinez was the common-law wife of the defendant and refused to allow her to testify.

This is not a case where one party denied the existence of the common-law marriage, or where the State produced evidence which would raise a fact issue on the existence of a common-law marriage, thereby requiring submission of the issue to the jury. *See Bodde v. State*, 568 S.W.2d 344 (Tex.Crim.App.1978); *Krzesinski v. State*, 169 Tex.Cr.R. 178, 333 S.W.2d 149 (1960).

The State argues that appellant failed to establish a common-law relationship by his testimony and that she was called to testify in "good faith." The elements of a common-law marriage are:

(1) living together as husband and wife;

(2) the parties' representing to others that they are married; and

(3) an agreement to be married.

TEX. FAM. CODE ANN. § 1.91(a)(2) (Vernon 1975).

Appellant did not testify to *facts* which would establish all the elements of a common-law marriage. However, he did testify that he and Martinez lived together, that she was his wife, and that they had a common-law marriage. Appellant repeatedly referred to Martinez as his wife during his testimony, and the State, on cross-examination, then referred eight times to Martinez as appellant's wife.[1] We do not believe the State is in a position to question the existence of the common-law

---

1. In only one question did the State stray from its practice of referring to Martinez as appel- lant's wife. In that question the State referred to her as "your wife, your girlfriend, whatever."

relationship having referred to appellant's "wife" eight times during its examination.

Although it was not until Martinez testified outside the presence of the jury that the *facts* of their relationship were established, we hold that the State, through its questioning of appellant, conceded the existence of the relationship and thereby allowed appellant to invoke the protections of article 38.11. It was error for the State to call Martinez to testify, having left the impression with the jury that it accepted the common-law relationship.

The State argues that if it was error to call Martinez to testify, then the error is harmless given the overwhelming evidence of his guilt. The Court of Criminal Appeals has recently addressed the propriety of a harm analysis in this type of situation. In *Aguilar v. State*, 715 S.W.2d 645 (Tex. Crim.App.1986) the Court stated:

> That heretofore the cases seem not to have expressly undertaken a harm analysis is simply reflective of the fact that it will be the rare case in which calling the accused's spouse to testify against him could *not* possibly contribute to his conviction, rather than that a harm analysis is *per se* inappropriate. Furthermore, in situations wherein the mere calling of a spouse to testify for the State has not been found to create the impression that the spouse would give damaging testimony, we have not reversed the convictions, irrespective that *Johnigan v. State*, ... found this error also to be unwaivable. [emphasis in original].

In the present case, the State posed questions which left the impression with the jury that Martinez' testimony would contradict appellant's testimony. In calling Martinez to testify on rebuttal, thereby forcing appellant to object in the jury's presence, the State left the impression that her testimony would contradict his alibi defense. This is exactly the situation condemned in *Johnigan*. Appellant's first ground of error is sustained and requires reversal.

In his second ground of error, appellant challenges the sufficiency of the evidence to show identity. Appellant relies on *Miller v. State*, 653 S.W.2d 510 (Tex.App.– Corpus Christi 1983). The holding of this Court was reversed in *Miller v. State*, 667 S.W.2d 773 (Tex.Crim.App.1984). In addition, a review of the evidence shows positive eyewitness identification of appellant by the victim's son, who had known the appellant for twenty-five years. Appellant's second ground of error is overruled.

In his third ground of error, appellant complains of improper jury argument. The prosecutor stated:

> "You want to let him go back to his friends, let him go, but as far as I am concerned, the man is guilty."

It is improper for a prosecutor to give his personal opinion of the accused's guilt. *Baldwin v. State*, 499 S.W.2d 7 (Tex.Crim. App.1973). In the present case, however, appellant made no objection at trial. While some statements are so improper that an objection will not be required, the statement here is not of that character, since an instruction to disregard would have cured the error. *Romo v. State*, 593 S.W.2d 690 (Tex.Crim.App.1980). Appellant's third ground of error is overruled.

The judgment of the trial court is REVERSED and the cause REMANDED to the trial court.