**Robert Andrew LOOKINGBILL,**
**Appellant,**

v.

**The STATE of Texas, Appellee.**

No. 13–91–007–CR.

Court of Appeals of Texas, Corpus Christi.

April 29, 1993.

Rehearing Overruled June 3, 1993.

Joseph A. Connors, III, Mark Alexander, McAllen, for appellant.

Rene Guerra, Dist. Atty., Theodore C. Hake, Asst. Dist. Atty., Edinburg, for appellee.

Before NYE, C.J., and FEDERICO G. HINOJOSA, Jr. and GILBERTO HINOJOSA, JJ.

## OPINION

### FEDERICO G. HINOJOSA, Jr., Justice.

A jury found appellant guilty of attempted capital murder, and the trial court found enhancement allegations to be true and assessed appellant's punishment at 75 years' confinement. By twenty points of error, appellant challenges the sufficiency of the evidence and complains that the trial court 1) discussed the enhancement allegations before the venire during *voir dire,* 2) admitted evidence of an extraneous offense, 3) permitted an unqualified witness to testify, 4) disqualified a competent juror, 5) allowed improper final argument, 6) commented on the weight of the evidence, and 7) admitted statements taken in violation of law. We affirm the trial court's judgment.

Appellant murdered his grandmother and attempted to murder his grandfather shortly before midnight on December 4, 1989. Appellant, who lived with the victims, entered their home looking for money and hit both grandparents on the head with a metal bar, giving them serious injuries. He took money, telephoned the operator, requested E.M.S. and police assistance, and ran to a neighbor's home, yelling that his grandparents had been beaten. Sergeant Alaniz was the first officer to arrive at the scene, followed by Officer Avila in a second vehicle. Investigator Garcia and Lieutenant Soto arrived shortly thereafter. Sergeant Alaniz first checked the victims and then radioed for medical assistance. Appellant told the officers that he had just arrived at the house by motorcycle and found that his grandparents had been beaten. The police officers noticed blood on appellant's boots and jacket sleeves. Officer Avila further determined that the motorcycle and the car on the premises had colder engines than would be expected of vehicles driven as recently as appellant stated. While outside, Sergeant Alaniz heard a noise in the tool shed and saw appellant coming from it. A short time later, the officers found appellant's blood splattered jacket in a closet.

While medical personnel were administering care to the victims, appellant began hovering over them, so Laura Neubauer, a fire department volunteer escorted appellant outside to comfort him and to prevent him from interfering with the medics. Since appellant was the primary witness and a relative of the victims, Officer Avila took him to the station to gain information. Ms. Neubauer rode to the police station with appellant and remained with him in the front room of the police station for what "could have been thirty minutes or whatever."

Lieutenant Soto returned to the station and noticed the splattered blood on appellant's clothing. Soto asked appellant for the clothing and then told Alaniz to read appellant the *Miranda* warnings. Soto then returned to the crime scene to obtain other clothes for appellant to wear. Sergeant Alaniz gave appellant the *Miranda* warnings, which appellant initialed, even

though he was not under arrest and was free to leave. Soto returned with appellant's other clothes, and appellant changed in the booking room. The officers found over $500 in appellant's pockets. Appellant stayed at the police station throughout the night. Appellant was never under any form of restraint, usually sat alone in the lobby, and shared the officers' breakfasts.

At approximately 9:00 a.m., and after appellant received new *Miranda* warnings, appellant signed a written statement that he had gone to the house and had discovered that his grandparents had been beaten. Shortly thereafter, Investigator Garcia and Investigator Lopez informed Chief Lizcano that the suspected murder weapon had been found in the same tool shed from which Sergeant Alaniz had seen appellant exiting. Chief Lizcano then told the investigators to arrest appellant. Appellant received the *Miranda* warnings for a third time, confessed to beating his grandparents with a pipe, and signed a statement to that effect. Appellant's grandmother died ten days later from brain injuries. A grand jury indicted appellant for the capital murder of his grandmother and the attempted capital murder of his grandfather, and the trial court granted the State's motion to consolidate the cases for trial.

By his first, second, and fifth points of error, appellant complains that the State and the trial court discussed the enhancement allegations before the venire during *voir dire*. This assertion is incorrect. The original statement of facts inadvertently omitted to note that the discussions occurred outside the presence of the jury. The parties have agreed that the discussions took place during a bench conference and the record has been corrected to reflect this agreement. We overrule appellant's first, second and fifth points of error.

By his third point of error, appellant complains that the trial court erred by admitting evidence that he had previously committed theft against the victims. The State contends that appellant failed to preserve error because he did not move to strike the evidence.

■ When the relevancy of evidence depends upon the fulfillment of a condition of fact, the court shall admit it upon, or subject to, the introduction of evidence sufficient to support a finding of the fulfillment of the condition. TEX.R.CRIM.EVID. 104(b). The party objecting to the evidence, not the trial court, has the duty to notice whether the conditions of admissibility are subsequently met. If the trial court admits evidence subject to its being "connected up," then the party objecting on relevancy grounds must re-urge that objection after all proof of relevancy is offered, must ask the trial court to strike the evidence, and must request the trial court to instruct the jury to disregard the evidence. *Fuller v. State*, 829 S.W.2d 191, 198–99 (Tex.Crim. App.1992). If the party objecting to the evidence does not re-urge the objection and move to strike the evidence, then the party forfeits the objection on appeal. *Id.* at 199.

■ The State requested the jury be excused and presented evidence that appellant stole a watch from the victims, gave it to a friend, and subsequently asked for its return to avoid the filing of criminal charges. The State offered the evidence to show the relationship between the murder victims and the accused, to show appellant's state of mind, and to show appellant's motive for the killing. Appellant objected, stating:

I'm not going to disagree with the case law she is citing. However, I think she is somewhat premature. At this time, there is no evidence of any motive involved. As far as any killing, perhaps once some aspect of that deal is presented it might be timely. At this point, I would say that there is no motive for anything other than that this individual wanted a watch back allegedly from a man that knowingly had a stolen watch apparently. And our concern is that is fine and dandy, but that has nothing to do with motive of any kind at all. It has not established any motive, has nothing to do with any motive at this point for a killing. But further it doesn't establish the intent or frame of mind at the time of any killing. It has not been linked up.

We would simply say it was premature. They can bring it in later, that's fine. We would simply say it is premature at this time.

The trial court asked the State if it could connect the evidence later on, and the State responded that it would "connect it throughout the case." The trial court then overruled the objection. Appellant did not re-urge the objection or move to strike the evidence. Thus, appellant lost the right to complain on appeal that the trial court admitted the evidence. We overrule appellant's third point of error.

■ By his fourth point of error, appellant complains that the trial court erred by admitting testimony from an unqualified witness. Appellant provides neither argument nor authority to support this point of error, citing only *Harris v. State*, 790 S.W.2d 568, 586 (Tex.Crim.App.1990), for the proposition that the alleged error warrants reversal under Tex.R.App.P. 81(b)(2). By failing to provide argument or authority in support of his point of error, appellant waives this point. *Rodriguez v. State*, 779 S.W.2d 884, 886 (Tex.App.—Corpus Christi 1989), *aff'd*, 808 S.W.2d 496 (Tex.Crim.App. 1991). We overrule appellant's fourth point of error.

By his sixth through tenth points of error, appellant complains that the trial court erred by granting the State's challenge for cause of a particular venireman. Appellant argues that the State failed to prove a substantial likelihood that the venireman would not be able to serve on a capital murder jury and that the trial court violated the State and federal constitutions by striking him on racial grounds. The State contends that it challenged the venireman on race-neutral grounds, that the grounds urged and the evidence heard were sufficient, and that the trial court's remarks, while indiscreet, were not objected to, do not indicate an abuse of discretion, and were harmless error, if any.

■ A prospective juror may be excluded for cause only when the juror's views on capital punishment are such that they would prevent or substantially impair the juror's ability to perform duties as a juror in accordance with the instructions and the oath. *Wainwright v. Witt*, 469 U.S. 412, 424, 105 S.Ct. 844, 852, 83 L.Ed.2d 841 (1985). We examine the whole *voir dire* testimony to determine whether the evidence supports a finding that the prospective juror is unable to take the requisite oath and to follow the law as given by the trial judge. *Goodwin v. State*, 799 S.W.2d 719, 731 (Tex.Crim.App.1990). We look to the prospective juror's testimony as a whole, and we reverse only upon finding the trial court clearly abused its discretion. *Farris v. State*, 819 S.W.2d 490, 501 (Tex. Crim.App.1990), *cert. denied*, —— U.S. ——, 112 S.Ct. 1278, 117 L.Ed.2d 504 (1992). Reviewing courts grant great deference to the decision a trial court makes regarding challenges for cause brought against venirepersons who vacillate when questioned about their ability to apply the law. *Vuong v. State*, 830 S.W.2d 929, 943 (Tex.Crim.App. 1992).

Appellant complains that the trial court granted the State's challenge for cause of a venireman whose *voir dire* responses are reproduced in part below:

Prosecutor: Okay. Question two is a little bit more difficult. If you can go ahead and read along with me as I read the question. Question two says whether there is a probability that the defendant would commit criminal acts of violence that would constitute a continuing threat to society. Now, you are being asked to look at the defendant's past behavior and decide probabilities, which means is there a chance, is there a likelihood that he is dangerous, that he poses a threat to society, that he will commit acts of violence on society. Do you follow so far?

Venireman: Yes, ma'am.

Prosecutor: Now, it doesn't mean you have to be 100 percent sure, because nobody is 100 percent sure of anything, and so you can deal with probabilities. Now, sometimes you can have the past criminal history of a person and you find that he has a criminal record. Let's say that you find he has been to prison once before for a similar

act, for stealing or something. Let's say that you find out he is on probation for a drug offense. Those are facts that you have to consider to be able to answer question two. Now, my question to you, Mr. [name], is can you and will you answer question two based on the facts that you hear?

Venireman: Yes, ma'am.

Prosecutor: Okay, and if the State convinces you beyond a reasonable doubt to answer question two yes, will you answer it yes, knowing the death penalty will be imposed?

Venireman: No, ma'am.

Prosecutor: Okay, you said you would not answer it yes? Do you want me to rephrase the question?

Court: He may not understand the question. Did you understand the question she asked you?

Venireman: You might repeat it.

Prosecutor: I'll go ahead and ask it again, Mr. [name]. Let's say first of all—let me ask you the first part of the question. If you were convinced beyond a reasonable doubt, and that's the burden, to answer question two yes, would you answer it yes?

Venireman: Yes, ma'am.

Prosecutor: Now, would you sit back and think, well, I answered one yes because I was convinced beyond a reasonable doubt to answer yes, and I know the Judge told me if I answer both of them yes that the defendant is going to get the death penalty. Are you the type of juror who is going to say I'm convinced beyond a reasonable doubt to answer question two yes, but because I know someone is going to get the death penalty I'm just going to go ahead and answer no; are you that kind of juror, sir?

Venireman: I would say no.

Prosecutor: Even if you were convinced to answer yes?

Venireman: Yes, ma'am.

Prosecutor: Okay, so if I convince you to answer question two yes, you would still answer no?

Venireman: Yes, ma'am.

Prosecutor: And why would that be, sir?

Venireman: Well, that's my opinion I would have.

Prosecutor: Why is it that you would answer no if you were convinced to answer yes?

Venireman: Well, it looks like that would be more sufficient to me. I don't know.

Prosecutor: When you say more sufficient to you, are you saying—and please, if I'm not—if I'm misunderstanding you, please tell me. Are you saying if I answer question one yes and then I have question two, and it should be yes, I'm still going to answer no because a life sentence in prison is sufficient and I'm not going to answer yes, or am I wrong in what I'm saying?

Court: Do you understand what she is saying? If you answer both questions yes, then the Judge, me, will have to enter a death sentence. Now, are you against the death sentence?

Venireman: Oh, yes, sir.

Court: Is that the reason you would answer no, not because you know that's what the facts show, but you would answer no because you don't want me to pass the death sentence; I mean is that the only reason?

Venireman: Yes, that's it.

The defense counsel then cross-examined the venireman concerning his ability to follow the law and evidence with respect to death penalty issues, and the venireman stated that he could answer the question truthfully and honestly, but then added that he would not do so because he did not "believe in anyone dying." The trial court then asked him if he could answer the questions truthfully, and he responded affirmatively. On re-direct examination the venireman stated that his beliefs would cause him to vote "no." On re-cross examination, the following discussion occurred:

Defense Counsel: That's what we need to know, not whether you are against the death penalty, but would you disobey the law and answer no to these

questions when it should be an answer of yes?

Venireman: I'll say no.

Defense Counsel: You would obey the law and answer yes?

Venireman: Yes, sir.

The State challenged the venireman for cause under Tex.Code Crim.Proc.Ann. art. 35.16(b)(1) (Vernon Supp.1993) (conscientious scruples regarding the death penalty). Appellant argued that the venireman stated that he personally opposed the death penalty but also stated that he would abide by the law and answer the questions fairly. The trial court then stated:

When he was asked the question he switched around again, and that's where the Court has problems, and of course I don't think there is any question the man is just gutless. That's all it is, and he will not—I don't care what anybody says, and he very plainly told—and for the record he's a black man. They are the ones that always get electrocuted over there. I think he probably just feels that way. I respect him for it. But the Court is going to grant the motion.

■ The State challenged the venireman on the grounds that his opposition to the death penalty would prevent him from following the court's instructions and from applying the law to the evidence. This is a constitutionally valid statutory ground for challenging a potential juror. The trial court did not abuse its discretion by excusing the venireman who was properly challenged. The trial court's remarks concerning the venireman's race only reflect the trial court's unnecessary attempt to explain what it believed to be the cause of the venireman's conscientious scruples against the death penalty. The trial court's remarks do not remove the fact that the venireman was unable to unequivocally state that he could follow the law and fairly apply it to the evidence. We overrule appellant's sixth through tenth points of error.

By his eleventh, twelfth, and thirteenth points of error, appellant complains that the evidence is insufficient to support a finding of guilt. In point eleven, appellant complains that there is insufficient evidence to corroborate his extrajudicial confession. In point twelve, appellant complains that the evidence did not show beyond a reasonable doubt that he was in the course of committing robbery, that he had the specific intent to commit murder, that the metal bar was a deadly weapon, or that he had the specific intent to cause the victim's death when he struck the victim. In point thirteen, appellant complains that the evidence showed appellant used a pipe but the jury charge asked the jury to find whether appellant used a metal bar.

■ When we review the sufficiency of the evidence in a criminal case, we view all the evidence in the light most favorable to the verdict to determine whether a rational trier of fact could have found the essential elements of the crime established beyond a reasonable doubt. *Butler v. State*, 769 S.W.2d 234, 239 (Tex.Crim.App. 1989); *Mathew v. State*, 839 S.W.2d 110, 111 (Tex.App.—Corpus Christi 1992, no pet.). We also apply this standard to cases involving circumstantial evidence. *Earhart v. State*, 823 S.W.2d 607, 616 (Tex. Crim.App.1991); *Carlsen v. State*, 654 S.W.2d 444, 449 (Tex.Crim.App.1983) (opinion on rehearing). We review the sufficiency of the evidence in the light most favorable to the verdict by comparing the evidence to the indictment as incorporated into the jury charge. *Benson v. State*, 661 S.W.2d 708, 715 (Tex.Crim.App.1983) (opinion on rehearing). Since mental culpability is of such a nature that it generally must be inferred from the circumstances under which the prohibited act occurred, the trier of fact may infer intent from any facts in evidence which tend to prove the existence of such intent. *Hernandez v. State*, 819 S.W.2d 806, 810 (Tex.Crim.App.1991), *cert. denied*, — U.S. ——, 112 S.Ct. 2944, 119 L.Ed.2d 568 (1992).

■ An extrajudicial confession standing alone is insufficient evidence to support a conviction; it must be corroborated by other evidence tending to show that the crime was committed. *Gribble v. State*, 808 S.W.2d 65, 70 (Tex.Crim.App. 1990), *cert. denied*, — U.S. ——, 111 S.Ct.

2856, 115 L.Ed.2d 1023 (1991). The corpus delicti of capital murder requires more than homicide by a criminal agency; it includes the elements which raise the offense from murder to capital murder. *Id.* at 71.

The trial court charged the jury:

Now, if you find from the evidence beyond a reasonable doubt that on or about the 5th day of December, 1989, in Hidalgo County, Texas, Robert Andrew Lookingbill, the defendant, did with the specific intent to cause the death of the said victim in that the said defendant, while in the course of committing or attempting to commit the offense of robbery of Lorenz K. Dannenberg, intentionally strike the said victim with a deadly weapon, to-wit: a metal bar, that in the manner of its use or intended use was capable of causing death or serious bodily injury, said act amounting to more than mere preparation that tended but failed to effect the commission of the offense intended, then you will find the defendant, Robert Andrew Lookingbill, guilty of attempted capital murder.

Unless you so find beyond a reasonable doubt, or if you have a reasonable doubt thereof, you will acquit the defendant of attempted capital murder and next consider whether he is guilty of the lesser offense of murder.

Thus, the jury was authorized to convict appellant for attempted capital murder if it found appellant 1) intentionally 2) struck the victim with 3) a metal bar, a deadly weapon, 4) intending to cause the victim's death 5) while in the course of committing or attempting to commit robbery.

■■■ A person commits robbery if, in the course of committing theft and with intent to obtain or maintain control of property, he intentionally, knowingly or recklessly causes bodily injury to another or he intentionally or knowingly threatens or places another in fear of bodily injury or death. TEX.PENAL CODE ANN. § 29.02(a) (Vernon 1989). The gravamen of robbery is the assaultive conduct and not the theft. *Crank v. State,* 761 S.W.2d 328, 350 (Tex. Crim.App.1988), *cert. denied,* 493 U.S. 874, 110 S.Ct. 209, 107 L.Ed.2d 162 (1989). The

victim of the robbery and the victim of the underlying theft need not be the same person. *Ulloa v. State,* 570 S.W.2d 954, 957 n. 2 (Tex.Crim.App. [Panel Op.] 1978).

The State introduced appellant's extrajudicial confession, which read:

WHEN I GOT HOME AT AROUND 1:15 A.M., I WENT INSIDE THE HOUSE. I WAS COKED UP. I HAD BEEN DRINKING ALSO AS I MENTIONED IN THE EARLIER STATEMENT[.] MY FRANDFATHER [sic] WAS SLEEPING ON THE FLOOR. I APPROACHED HIM WITH THE LONG METAL BAR. I JUST RAISED THE BAR AND STRUCK HIM IN THE HEAD. I WAS STANDING RIGHT ABOVE HIM. I HAD PICKED UP THIS BAR FROM THE GARAGE. MY GRANDFATHER DID NOT YELL OUT. HE JUST GROANED IN PAIN. I MUST HAVE HIT HIM AT LEAST MORE THAN ONE TIME. I THEN WENT TO MY GRANDMOTHER'S BEDROOM. SHE WAS SLEEPING. I HIT HER ON HER HEAD WITH THE SAME PIPE. IT WAS DARK[.] I COULD NOT SEE HER[,] BUT I KNEW WHERE SHE WAS SLEEPING. SHE DID NOT YELL OUT. I THEN TOOK THE MONEY IN HER PURSE. SHE ALWAYS HAS MONEY IN HER PURSE. I THEN HAD THE OPERATOR CALL THE COPS AND E.M.S. AFTERWARD I CALLED OUT THE NEIGHBOR'S GIRL IN THE BACK OF THE HOUSE WHO RENTS THE APARTMENT. AFTER THE POLICE ARRIVED.[sic] THE IRON PIPE WHICH WAS SHOWN TO ME BY CHIEF LIZCANO IS THE SAME PIPE I USED TO STRIKE BOTH MY GRAND PARENTS [sic] TO TAKE THEIR MONEY. THIS IS A TRUE AND CORRECT STATEMENT. I WOULD ALSO LIKE TO STATE THAT THE LADY' [sic] BEIGE PURSE IN THE SAN JUAN POLICE DETECTIVE ROOM IS THE SAME PURSE I TOOK THE MONEY FROM.

The State also produced evidence that police officer and medical personnel were called to a house in San Juan on the morn-

ing of December 5, 1989. The officers testified that they found the victims' heads bleeding profusely. Investigator Garcia testified that he found a pipe in the tool shed which had blood and hair on it. He also testified that the object was capable of causing death. Dr. Ramos testified that the victim received his injuries from being hit with extreme force by a blunt object.

The State produced a witness who testified that appellant appeared at his home shortly before midnight on December 4, 1989, and that appellant was "hyper" and asked for money. The witness testified that appellant showed him a jewel covered watch, asked about its possible value, and commented that it belonged to his grandmother. The witness also testified that appellant stated he would return if he found money.

The victim's daughter testified that between the first and the third days of each month, her parents received Social Security checks totalling over $500 and that her mother would keep some of the money in her purse in the bedroom. Lieutenant Soto testified that appellant had over $500 in his pants on the morning of December 5, 1989. The purse, also introduced into evidence, did not contain any money. A chemist testified that the blood on the metal bar matched that of the male victim.

▇▇▇ The evidence is sufficient to corroborate an extrajudicial confession in that it shows physical injury leading to the death of one victim and severe wounds to a second victim, a deadly weapon which could have caused the wounds the victims suffered, missing money, appellant's previous need for money, and a large amount of cash on appellant after the incident. Furthermore, this evidence, in conjunction with the confession, is sufficient for a rational trier of fact to find the essential elements of the offense beyond a reasonable doubt. The jury could rationally infer beyond a reasonable doubt appellant's intent to kill his victims from his statement that the victims were sleeping when appellant struck them on the head with the metal bar.

▇▇▇ Finally, appellant, in his confession, referred to the murder weapon as "the long metal bar" and prosecution witnesses referred to the weapon as a metal bar throughout the trial. Taking this evidence in the light most favorable to the verdict, we find that a rational jury could conclude beyond a reasonable doubt that appellant struck the victims with a metal bar. We overrule appellant's eleventh through thirteenth points of error.

By his fourteenth point of error, appellant complains that the evidence shows that the officers did not properly warn appellant before taking his confession. He argues that the trial court charged the jury that it must disregard the confession if it found that the police did not administer the warnings.

▇▇▇ An arresting officer shall, without unnecessary delay, take the arrestee before a magistrate. TEX.CODE CRIM.PROC.ANN. art. 15.17 (Vernon Supp.1992). Absent a showing of a causal connection between the failure to take an accused before a magistrate and the accused's confession, the validity of a confession is not affected for failure to comply with the statute. *Boyd v. State*, 811 S.W.2d 105, 124 (Tex. Crim.App.1991), *cert. denied,* — U.S. —, 112 S.Ct. 448, 116 L.Ed.2d 466 (1991). A violation of the requirement that an accused be presented before a magistrate without unnecessary delay will not invalidate a confession voluntarily given after a defendant received his *Miranda* rights. *Id.* at 125; *Von Byrd v. State*, 569 S.W.2d 883, 893 (Tex.Crim.App.1978). Warnings which convey on the face of the statement the exact meaning of the warnings of TEX. CODE CRIM.PROC.ANN. art. 38.22 (Vernon 1979), though they may not do so in exactly the statutory language, are sufficient to comply with the requirements of that statute. *White v. State*, 779 S.W.2d 809, 827 (Tex.Crim.App.1989), *cert. denied,* 495 U.S. 962, 110 S.Ct. 2575, 109 L.Ed.2d 757 (1990).

▇▇▇ Appellant complains that Chief Lizcano warned him:

You have [sic] right to remain silent and not make any statement at all and any

statement you make will be used against you at your trail [sic].

Appellant contends that the statute requires he be warned that any statement he makes *may* be used against him at trial. The warning is sufficient under *White.* We overrule appellant's fourteenth point of error.

By his fifteenth point of error, appellant complains that the State made an improper and incurable jury argument. He argues that the prosecutor injected her personal beliefs about appellant's guilt. The State contends that the argument was permissible and that appellant failed to object and thus failed to preserve error.

Jury arguments must be confined to four areas: 1) summation of the evidence, 2) reasonable deductions from the evidence, 3) answers to the arguments of opposing counsel, and 4) pleas for law enforcement. *Whiting v. State,* 797 S.W.2d 45, 48 (Tex.Crim.App.1990). A prosecutor may not inject personal opinions about the defendant's guilt, but the prosecutor may state a reasonable deduction from the evidence. *Compare Villalobos v. State,* 568 S.W.2d 134, 134 (Tex.Crim.App. [Panel Op.] 1978); *with Miller v. State,* 566 S.W.2d 614, 620 (Tex.Crim.App. [Panel Op.] 1978); *see also Villarreal v. State,* 716 S.W.2d 640, 642 (Tex.App.—Corpus Christi 1986, no pet.).

The general rule is that error committed during jury argument is preserved only if the defendant objects and obtains an adverse ruling from the trial court. *Harris v. State,* 784 S.W.2d 5, 12 (Tex.Crim. App.1989); *Mora v. State,* 797 S.W.2d 209, 215 (Tex.App.—Corpus Christi 1990, pet. ref'd). To preserve error, a party complaining of improper jury argument must 1) object, and if the objection is sustained, 2) request an instruction to disregard, and 3) move for a mistrial. *Harris,* 784 S.W.2d at 12; *Brooks v. State,* 642 S.W.2d 791, 798 (Tex.Crim.App.1982). Generally, any impropriety in the prosecutorial argument is waived if the defendant fails to make a proper and timely objection or fails to request an instruction to disregard. *Briddle v. State,* 742 S.W.2d 379, 390 (Tex.Crim.

App.1987), *cert. denied,* 488 U.S. 986, 109 S.Ct. 543, 102 L.Ed.2d 573 (1988); *Hinojosa v. State,* 788 S.W.2d 594, 596 (Tex.App.— Corpus Christi 1990, pet. ref'd). However, if the State's argument is so prejudicial that an instruction to disregard would not cure the harm, an objection is not necessary to preserve error. *See Kinnamon v. State,* 791 S.W.2d 84, 89 (Tex.Crim.App. 1990); *Harris,* 784 S.W.2d at 12.

The State argued:

Those are your choices and I can tell you, ladies and gentlemen, that the State has proven its case beyond a reasonable doubt and that you must follow the law and that you have no choice but to find the Defendant guilty of capital murder.

\* \* \* \* \* \*

It is the State's contention again that we have proven to you beyond a reasonable doubt that the Defendant is guilty of attempted capital murder and you must follow the law, ladies and gentlemen.

Appellant complains that the State's argument for a guilty verdict under the capital murder charge was improper but that the argument for a guilty verdict under the attempted capital murder charge was proper.

The Court of Criminal Appeals has found a similar argument to constitute nothing more than the prosecutor's deduction from the evidence and to not reflect error. *Miller,* 566 S.W.2d at 620 ("I just ask you to find him guilty because he is guilty under the evidence"). Furthermore, this Court has found more prejudicial arguments to be curable by instruction to disregard. Specifically, we found a prosecutor who stated "as far as I'm concerned, the man is guilty," did not make an argument that could not have been cured by an instruction to disregard. *Villarreal,* 716 S.W.2d at 642.

We hold that the State's argument was not improper. Nevertheless, even if the argument was improper, the error could have been cured with an instruction to disregard the statement. Since appellant did not object or move the trial court to instruct the jury to disregard the statement,

he waived any error committed by the State. We overrule appellant's fifteenth point of error.

By his sixteenth point of error, appellant complains that the trial court erred by commenting on the weight of the evidence tending to prove the confession was obtained legally.

When ruling on the admissibility of evidence, a judge shall not discuss or comment upon the weight of the evidence or its bearing on the case, but shall simply decide whether or not it is admissible; nor shall he, at any stage of the proceeding, make any remark calculated to convey to the jury his opinion of the case. TEX.CODE CRIM. PROC.ANN. art. 38.05 (Vernon 1989). A remark from the judge does not violate art. 38.05 unless it benefits the state or harms the defendant. Selman v. State, 807 S.W.2d 310, 312 (Tex.Crim.App.1991). A defendant must object to the comment at trial in order to preserve error for appellate review. Sharp v. State, 707 S.W.2d 611, 619 (Tex.Crim.App.1986), cert. denied, 488 U.S. 872, 109 S.Ct. 190, 102 L.Ed.2d 159 (1988); Sharpe v. State, 648 S.W.2d 705, 706 (Tex.Crim.App.1983). An instruction to disregard will usually cure the error. Marks v. State, 617 S.W.2d 250, 252 (Tex. Crim.App. [Panel Op.] 1981).

Appellant cites no authority for the proposition that a comment from the judge may be so egregious that an objection is unnecessary to preserve error. This Court has consistently stated that an objection is necessary to preserve the complaint. Martinez v. State, 822 S.W.2d 276, 282 (Tex. App.—Corpus Christi 1991, no pet.); Reyna v. State, 797 S.W.2d 189, 193 (Tex.App.— Corpus Christi 1990, no pet.). We also note that the Court of Criminal Appeals has held that an objection is necessary to preserve alleged error involving a comment on the weight of the evidence establishing the legality of a search. Downey v. State, 505 S.W.2d 907, 909 (Tex.Crim.App.1974). We overrule appellant's sixteenth point of error.

By his seventeenth point of error, appellant challenges the trial court's findings of facts regarding the written statements appellant gave the San Juan police.

We review the trial court's findings in a suppression hearing under an abuse of discretion analysis. See Stone v. State, 583 S.W.2d 410, 413 (Tex.Crim.App. 1979); see also Williams v. State, 566 S.W.2d 919, 922 (Tex.Crim.App.1978). The trial court is the sole judge of the credibility of the witnesses at a pre-trial suppression hearing and may believe or disbelieve the testimony of any witness. Gentry v. State, 770 S.W.2d 780, 790 (Tex.Crim.App. 1988), cert. denied, 490 U.S. 1102, 109 S.Ct. 2458, 104 L.Ed.2d 1013 (1989); Holloway v. State, 751 S.W.2d 866, 869–70 (Tex.Crim. App.1988). The trial court must hear some evidence to support its finding. Vigneault v. State, 600 S.W.2d 318, 329 (Tex.Crim. App.1980).

Here, the trial court heard from the officers who first met appellant at the victim's house and the officers who spoke with appellant while he remained at the police station. They consistently testified that appellant did not appear to be under the influence of drugs or alcohol, that appellant was not under arrest or restrained in any way until after 10:00 a.m. on December 5, 1989, that appellant received Miranda warnings before giving either written statement, and that the police officers used no physical force or any purposeful or flagrant conduct. The witnesses testified that appellant joined the police officers for breakfast tacos and coffee. Appellant did not testify or present any witnesses to contest the State's witnesses. The trial court heard evidence supporting its findings and did not abuse its discretion. We overrule appellant's seventeenth point of error.

By his eighteenth through twentieth points of error, appellant complains that the trial court erred by admitting the statements into evidence. Appellant argues that the statements were the product of an illegal detention and of a warrantless arrest made without probable cause. Appellant raises federal constitutional, state constitutional, and statutory arguments.

An individual is arrested when he has been actually placed under restraint or taken into custody. Tex.Code Crim.Proc. Ann. art. 15.22 (Vernon 1989). A person has been seized under the Fourth Amendment when, in view of all the circumstances surrounding the law enforcement officer's action, a reasonable person would have believed he was not free to leave. *United States v. Mendenhall*, 446 U.S. 544, 554, 100 S.Ct. 1870, 1877, 64 L.Ed.2d 497 (1980).[1] Persons who voluntarily accompany investigating officers to a certain location and who know or should know that the officers suspect them of having committed a crime are not "restrained" or "in custody" as contemplated by art. 15.22, the Fourth Amendment, or Tex.Const. art. I, § 9. *Livingston v. State*, 739 S.W.2d 311, 327 (Tex. Crim.App.1987), *cert. denied*, 487 U.S. 1210, 108 S.Ct. 2858, 101 L.Ed.2d 895 (1988). The act is considered voluntary when the circumstances show that the person acts upon the request, urging, or invitation of the police officers rather than upon the use of force, coercion, or threat. *Id.*

An officer may arrest a person without a warrant when the facts and circumstances within the officer's knowledge or of which he has reasonably trustworthy information are sufficient to warrant a prudent person in believing that the arrested person committed or was committing an offense. *Rance v. State*, 815 S.W.2d 633, 635 (Tex.Crim.App.1991).

An arresting officer shall, without unnecessary delay, take the arrestee before a magistrate. Tex.Code Crim.Proc.Ann. art. 15.17 (Vernon Supp.1992). Absent a showing of a causal connection between the failure to take an accused before a magistrate and the accused's confession, the validity of a confession is not affected for failure to comply with the statute. *Boyd v. State*, 811 S.W.2d 105, 124 (Tex.Crim.App. 1991), *cert. denied*, —— U.S. ——, 112 S.Ct. 448, 116 L.Ed.2d 466 (1991). A violation of the requirement that an accused be presented before a magistrate without unnecessary delay will not invalidate a confession voluntarily given after a defendant received his *Miranda* rights. *Id.* at 125; *Von Byrd v. State*, 569 S.W.2d 883, 893 (Tex.Crim.App.1978).

The evidence shows that appellant voluntarily went with the officers to the police station at their request and remained there through the morning without any use of force, coercion, or threats. Appellant was not restrained in any way. Under the circumstances, a reasonable person would not have believed he was not free to leave. Appellant argues that the officers took his clothes away; however, the evidence shows that appellant was asked to give up his clothes, that he did so willingly, and that he changed into other clothes he owned. We do not see how a reasonable person would interpret the change of clothing as an indication that the person would not be free to leave. The record does not show that appellant was under arrest before 10:00 a.m.

The officers had the following information when they arrested appellant:

1. Appellant was the first person to discover the victims;
2. The victims had severe head injuries inflicted by a blunt instrument;
3. The vehicle upon which appellant arrived at the residence had a cold engine when the officers arrived at the scene;
4. Appellant's clothes had blood splattered on them;
5. Appellant removed his jacket while officers were at the scene and hid it in a closet;
6. Sergeant Alaniz heard a sound in the tool shed and saw appellant exiting from it; and
7. A metal bar, with blood and hair on it, was found in the tool shed.

Given these facts, a prudent person would be warranted in believing that appellant had committed the offense against the vic-

---

**1.** The Supreme Court has since noted that a person is not seized until that person submits to the show of authority or the exercise of physical force. *California v. Hodari D.*, 499 U.S. 621, ——, 111 S.Ct. 1547, 1550, 113 L.Ed.2d 690 (1991).

tims. The officers legally arrested appellant before he gave his written confession.

■ Finally, appellant was given the *Miranda* warnings before being arrested, after being arrested, and before he gave his written statement. Appellant has not shown how the statement, which he immediately gave upon being arrested, resulted from the failure of the officers to take him before a magistrate. Since appellant had been given the *Miranda* warnings, the confession was not the result of the failure to present him before the magistrate. We overrule appellant's eighteenth through twentieth points of error.

We AFFIRM the trial court's judgment.

GILBERTO HINOJOSA, J., not participating.