Albert MATHEW a/k/a Anthony
Mills, Appellant,

v.

The STATE of Texas, Appellee.

No. 13–91–189–CR.

Court of Appeals of Texas,
Corpus Christi.

July 30, 1992.

---

J.R. Seeman, Houston, for appellant.

John B. Holmes, Dist. Atty., Andrea F. Lopes, Asst. Dist. Atty., Houston, for appellee.

Before NYE C.J., and FEDERICO G. HINOJOSA, Jr., and KENNEDY, JJ.

## OPINION

FEDERICO G. HINOJOSA, Jr., Justice.

A jury found appellant guilty of burglary of a habitation with intent to commit theft, found appellant used or exhibited a deadly weapon, a firearm, in the commission of the offense, and found appellant had two prior felony convictions. The jury assessed punishment at 85 years' confinement. By a single point of error, appellant complains that the evidence is insufficient to establish his guilt for burglary of a habitation beyond a reasonable doubt. We disagree and affirm the trial court's judgment.

When we review the sufficiency of the evidence in a criminal case, we view all the evidence in the light most favorable to the verdict to determine whether a rational trier of fact could have found the essential elements of the crime established beyond a reasonable doubt. *Butler v. State,* 769 S.W.2d 234, 239 (Tex.Crim.App.1989); *Prophet v. State,* 815 S.W.2d 836, 837 (Tex. App.—Corpus Christi 1991, no pet.). We also apply this standard to cases involving circumstantial evidence. *Earhart v. State,* 823 S.W.2d 607, 616 (Tex.Crim.App.1991); *Carlsen v. State,* 654 S.W.2d 444, 449 (Tex. Crim.App.1983) (opinion on rehearing).

The essential elements of burglary are 1) a person 2) without effective consent of the owner 3) enters a habitation or building not open to the public 4) with intent to commit theft. TEX. PENAL CODE ANN. § 30.-02(a) (Vernon 1989). A firearm is a deadly weapon per se. TEX. PENAL CODE ANN. § 1.07(a)(11) (Vernon 1974).

Intent to commit theft may be inferred from the circumstances. *Lewis v. State,* 715 S.W.2d 655, 657 (Tex.Crim.App. 1986). Flight is a circumstance from which an inference of guilt may be drawn. *Thompson v. State,* 652 S.W.2d 770, 772 (Tex.Crim.App.1981); *Davis v. State,* 783 S.W.2d 313, 318 (Tex.App.—Corpus Christi 1990, no pet.).

The complaining witness testified that she returned home with her daughter and found her kitchen window pried open. Mother and daughter both testified that the window had been closed and locked when they left the home earlier in the day. After discovering the open window, they each ran to a different neighbor's home.

Mother went to the house next door and requested the neighbor, Mr. Smith, to accompany her to her house. Mrs. Smith called the police. Mr. Smith testified that he armed himself with a pistol and entered complainant's home, followed by complainant. He found no one downstairs, but when he went upstairs, he saw a black man wearing an orange shirt opening the door to a bedroom. He saw the man's face and a chrome or stainless steel gun in his hand. The burglar slammed the bedroom door shut, and the two men exchanged fire. Mr. Smith identified the captured man as the burglar. He identified appellant in court, though he said he probably could not pick him out of a lineup.

The daughter observed a figure pass by the window of her brother's bedroom. After she heard shots, she saw a black man wearing an orange shirt break the window, but she did not see him jump out of the window. She observed a gun in his hand. She could not identify the man in her house.

Police Chief Maddox testified that he had just left his home, which was in the same subdivision as the burglarized home, when the call came over his radio to proceed to the burglarized house, which was one block away. He arrived at the scene of the burglary in one minute or less and heard shots just before he pulled up in front of the house. He saw a black male wearing an orange shirt and blue pants breaking the upstairs window, exiting through the win-

dow, and dropping to the ground. He also saw a chrome or nickel plated revolver in his hand. Chief Maddox called to the man and identified himself, but the man ran to the side of the house and jumped over a fence. Chief Maddox identified appellant as the person he saw jump out of the window.

Lieutenant McArthur testified that he responded to a call that shots had been fired and a burglary suspect was running in the direction of Deerbrook Mall, where he and Assistant Chief Medley were located. They drove immediately to the bank building directly behind the residence and met Chief Maddox, who gave them a description of the suspect. Chief Maddox and Lieutenant McArthur then went to opposite sides of the bank building. Lieutenant McArthur, "just seconds after [heading] toward the west end of the building," saw a man wearing an orange shirt run from behind the bank. Upon being challenged, the suspect ran back behind the bank. The officer followed, spotted the same man running eastward, and yelled to him to stop. The suspect continued to run eastward, then turned and ran towards the officer. The suspect stopped approximately fifteen feet from McArthur and reached behind his back. McArthur, who had his gun aimed at the suspect, said, "Don't do this," and the suspect turned and ran, revealing that his hand was on a gun in the small of his back. The suspect ran into a picnic area, ran out again, and made a throwing motion towards some bushes. The suspect then attempted to jump a fence, but he was caught by Walker and Medley. McArthur found a gun near the bushes where he saw the suspect make the throwing motion. McArthur saw the arrest and identified appellant as the man who made the throwing motion and who was arrested by Walker.

Officer Walker testified that he was on routine patrol when the burglary call went out. He arrived at the house when Chief Maddox was entering his vehicle. Chief Maddox waved Walker to the back of the house, and Walker ran behind the house and west in pursuit of the suspect. Walker heard on the radio that McArthur had spotted a suspect behind the bank building, and

Walker saw the suspect as he approached the bank. Walker also saw that Medley was approaching. Walker ran to Medley to tell him that the suspect was armed, and the two officers proceeded to apprehend the suspect, who was attempting to climb a fence. Walker arrested the suspect, read him the Miranda warnings, and called EMS to treat the suspect's cuts. EMS arrived and treated the suspect at the scene of the arrest. Walker then took the suspect directly to the station, where he emptied the suspect's pockets and discovered a watch and some jewelry. Walker identified appellant as the man he arrested.

Detective Smith testified that he found blood on the upstairs window and on the fence the suspect ran along. He did not test the blood. He found jewelry under the broken bedroom window. He took fingerprints and a palm print from the kitchen sink and kitchen window, the suspected point of entry. He also took fingerprints and a right palm print from the suspect. He was unable to obtain a left palm print, since EMS previously bandaged that hand. He gave these prints to Deputy Mills. He also identified bullet holes in the bedroom door as being caused by the gun found in the bushes.

Deputy Mills testified that one of the fingerprints taken at the burglarized home had insufficient ridge detail for comparison. She further testified that she took palm prints and fingerprints from appellant on the day of trial. She matched appellant's left palm print with the palm print obtained at the burglarized home. She also matched the other fingerprint obtained at the scene with appellant's known fingerprint.

Mother and daughter testified that they did not give appellant permission to enter their home. The mother also testified that the jewelry found in appellant's possession belonged to her. Finally, she stated that she had washed the area around the sink the morning before the burglary.

Generally, fingerprint evidence alone will be sufficient to sustain a conviction if the evidence shows that the prints

were necessarily made at the time of the burglary. *Bowen v. State*, 460 S.W.2d 421, 423 (Tex.Crim.App.1970); *Nieto v. State*, 767 S.W.2d 905, 908 (Tex.App.—Corpus Christi 1989, no pet.). In the present case, fingerprint evidence corroborates the testimony of two eyewitnesses, Mr. Smith and Chief Maddox, that they saw appellant in or leaving the house. Intent to commit theft is supported by the circumstance of flight and the fact that appellant was apprehended with stolen goods.

A rational factfinder could find that the evidence established all the essential elements of burglary. We overrule appellant's point of error and affirm the trial court's judgment.