**Brenda Bowling COLELLA, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 13–92–501–CR.**

Court of Appeals of Texas, Corpus Christi.

July 29, 1993.

Ernesto Gonzales, Harlingen, for appellant.

Luis V. Saenz, Dist. Atty., John A. Olson, Asst. Dist. Atty., Brownsville, for appellee.

Before FEDERICO G. HINOJOSA, Jr., KENNEDY and DORSEY, JJ.

## OPINION

FEDERICO G. HINOJOSA, Jr., Justice.

A jury found appellant guilty of capital murder. The State elected not to pursue the death penalty, and the trial court assessed punishment at life imprisonment. By a single point of error, appellant complains that the evidence is insufficient to support the jury's verdict. We find the evidence insufficient and reverse the trial court's judgment.

Appellant, Brenda Colella, and her husband, Paul Colella, lived in a tent on the beach at South Padre Island. Appellant worked in a Pizza Hut. Anthony Wilson, also known as "Red," and Paul Colella earned money by rescuing vehicles stuck in the sand. Appellant would often shower and change at Jack Dunn and Victoria Larson's trailer.

On the afternoon of September 12, 1991, Paul Colella and Red Wilson helped Ricky Taylor and the two murder victims, Michael Lavesphere and David Ray Taylor, rescue another motorist's vehicle from a sand dune. The Taylors and Lavesphere asked Paul Colella where they might find a party on the beach. The Taylors, the Colellas, Lavesphere, and Wilson remained together, drank and played with a Frisbee. During this time, David Ray Taylor paid special attention to Appellant. This last fact upset Paul Colella who told David Taylor, "This is my wife." Taylor apologized, and the group remained together on the beach drinking for a couple of more hours.

Appellant left the group to return to the Colellas' camp, at approximately the same time that Paul left with Red to "look for a tow," that is, to find another vehicle to rescue. Paul and Red drove north, obtained gasoline, and then went to Isla Blanca Park. There, Red showered, but Paul indicated that he had showered earlier. While Red showered, Paul burglarized some nearby boats, taking a pistol and a camera.

After Paul and Red left the beach, Lavesphere and the Taylors returned to their pick-up truck and drove towards the Town of South Padre Island to eat dinner. Lavesphere and the Taylors saw appellant hitchhiking on Highway 100, and she accepted a ride from them.

An unidentified motorist subsequently drove appellant to Victoria Larson's trailer. Appellant, who was bruised and crying and had torn clothes, told Larson that Lavesphere and the Taylors had picked her up, that two of the men had held her down while the third man raped her. Dunn and Larson recommended that appellant call the police, but appellant objected, saying that she was wanted for fraud in Indiana. Larson then searched for Paul Colella and Red Wilson, first by CB radio, then by driving towards Highway 100. She found and told the two men, who then sped to the trailer.

Paul asked appellant if the men had raped her, and she replied that they had. While the rest of the group tried to comfort appellant, Paul became angry, yelling at appellant and threatening to kill Lavesphere and the Taylors. Larson then noticed that Paul had a gun. Appellant, Red, and Larson tried to discourage Paul, appellant saying, "Don't go, please don't go."

Sid and Sherie Wilson, neighbors of Larson and Dunn, then arrived at the trailer. Sherie was drunk and said that appellant was lying about the rape. Paul punched Sherie in the mouth, something Sherie was "not accustomed to," and Sid and Paul began arguing and fighting. When Paul started firing shots around the camp, Sid returned to the trailer saying that he was going to turn Paul over to the police, but Dunn persuaded him not to. Sid went back out, and Red heard a second series of shots. Red then went out in the Bronco, got Sid, and took him back to the trailer. Red then picked up appellant and Paul. At the Colellas' camp, Paul, Red and appellant heard Sid shooting a .22 rifle, so they left the area and looked for another place to stay.

While traveling north along the beach, they noticed the victims' white pick-up truck. Michael Lavesphere and David Taylor were sleeping in the truck; Rick Taylor had decided to sleep in the sand dunes. Paul asked Red to turn around and to turn off the headlights. Red did so, and Paul again asked appellant if the men had raped her. When appellant answered affirmatively, Paul exited the Bronco, telling him to turn the lights on. Red then said, "Man, I don't want to see this. I don't want no part of it." Paul replied, "Just turn the damn lights on." Red turned on his headlights, and Paul ran up to the pick-up truck and shot the two men inside. Appellant remained inside the Bronco with Red, and when Paul fired the first shot, they both "started going out of it." Appellant said, "Oh, my God. He shot somebody."

Red immediately put the Bronco in gear and turned it around heading north. Paul ran to the Bronco and jumped into the back. Paul knew that one of the men was missing and that the pick-up truck should be disposed of, and he insisted that Red return to the murder scene. Red turned around, drove past the pick-up truck, and Paul jumped out. Paul entered the victims' pick-up truck, started it, and began driving toward the highway. When he reached the highway, Paul turned north, and Red followed with appellant still in the Bronco.

Paul drove the victims' pick-up truck off the road, where it became stuck in the sand. He waved to Red, who protested and started to leave, but then returned and helped Paul free the vehicle from the sand. They failed to engage the pick-up truck's four-wheel drive, and the Bronco's drive shaft broke when they pulled the truck out. Paul, Red and appellant then pushed Red's Bronco to the side of the road where Red attempted to fix it. Meanwhile, Paul engaged the pick-up truck's four-wheel drive and continued in a northerly direction.

Appellant remained with Red, who finished fixing the Bronco's drive shaft about the time Paul returned on foot. The three got in the Bronco and drove south. Paul's pants were wet. He examined the contents of Rick Taylor's wallet, took the money, and threw the wallet out the window. Red was driving in the direction of the Colellas' camp when Paul told him to stop. Red stopped the Bronco; Paul exited the vehicle and threw the gun into the gulf. They continued to the camp, where the Colellas packed their belongings. Red then drove them to a pay phone at the Tiki restaurant. Paul warned Red, "You will regret it if you go to the cops." Red then left the Colellas and went to sleep on the beach.

The Colellas went to Paul's brother's house. The next morning, Paul's brother, Steve, and Paul's sister, Lori, arrived on the beach to "check on" Red. After Steve and Lori left, Red went to Sid's house, where he gave Sherie an unfired bullet he found in the Bronco and said that he might be in trouble. Red sat with Sid, drinking coffee. Jack Dunn called with information about a car needing a tow. Red, Sid, and a third man went to tow the car out of the sand, and they encountered Rick Taylor in another pick-up truck, looking for his brother and friend.

Sid mentioned the rape, and Rick denied knowing anything about a rape. An ambulance and a police car then went by, traveling to the place the white pick-up truck was found in the bay. Tire tracks suggested that Red's Bronco pushed the pick-up truck into the water, but neither vehicle showed any marks tending to indicate that the Bronco pushed the pick-up truck. The next day, Sid Wilson contacted the police and gave them the bullet which was found to be of a caliber which could have caused the victims' wounds.

During his investigation, Deputy Sheriff Martinez interviewed Anthony (Red) Wilson, Jack Dunn, Victoria Larson, Sid Wilson, Sherie Wilson, Rick Taylor, and the victims' employers. Appellant and Paul could not be found, but Red was contacted and spoke with investigators three days after the bodies were found. Red's initial statement was accurate, except to limit his involvement. Red later recanted those parts of the story relating to the scene of the shooting and to the disposal of the truck and bodies. Warrants were issued for appellant and Paul Colella thirty-three days after the bodies were discovered. The Colellas were arrested six months later in Indiana. Deputy Martinez

uncovered no other outstanding warrants on the Colellas.

A grand jury indicted Anthony Wilson, Paul Colella, and Brenda Colella for capital murder. Wilson was given immunity in exchange for his testimony against the Colellas. Paul and Brenda Colella were tried separately.

■ When we review the sufficiency of the evidence in a criminal case, we view all the evidence in the light most favorable to the verdict to determine whether a rational trier of fact could have found the essential elements of the crime established beyond a reasonable doubt. *Butler v. State,* 769 S.W.2d 234, 239 (Tex.Crim.App.1989); *Mathew v. State,* 839 S.W.2d 110, 111 (Tex. App.—Corpus Christi 1992, no pet.). We also apply this standard to cases involving circumstantial evidence. *Earhart v. State,* 823 S.W.2d 607, 616 (Tex.Crim.App.1991); *Carlsen v. State,* 654 S.W.2d 444, 449 (Tex. Crim.App.1983) (opinion on rehearing). We review the sufficiency of the evidence in a light most favorable to the verdict by comparing the evidence to the indictment as incorporated into the jury charge. *Benson v. State,* 661 S.W.2d 708, 715 (Tex.Crim.App. 1983) (opinion on rehearing).

■ Since mental culpability is of such a nature that it generally must be inferred from the circumstances under which the prohibited act occurred, the trier of fact may infer intent from any facts in evidence which tend to prove the existence of such intent. *Hernandez v. State,* 819 S.W.2d 806, 810 (Tex.Crim.App.1991), *cert. denied,* —— U.S. ——, 112 S.Ct. 2944, 119 L.Ed.2d 568 (1992). The trier of fact may look at events occurring before, during, and after the offense in determining whether the defendant participated in the offense. *Beardsley v. State,* 738 S.W.2d 681, 685 (Tex.Crim.App.1987); *Escobar v. State,* 799 S.W.2d 502, 506 (Tex.App.—Corpus Christi 1990, pet. ref'd).

■ The indictment charged appellant and two accomplices with capital murder for intentionally and knowingly causing the deaths of Michael Lavesphere and David Ray Taylor by shooting them with a firearm. The indictment also charged them with murder for

having the intent to cause serious bodily injury to Michael Lavesphere and David Ray Taylor and committing acts clearly dangerous to human life, that is, shooting the victims with a firearm. The application paragraph authorized the jury to convict appellant if it found beyond a reasonable doubt that

> on or about the 12th day of September, 1991, in Cameron County, Texas, Paul R. Colella did intentionally or knowingly cause the death of the individuals, Michael Lavesphere and David Ray Taylor, by shooting them with a gun and that the defendant Brenda B. Colella, then and there knew of the intent, if any, of said Paul R. Colella to shoot and kill the said Michael Lavesphere and David Ray Taylor and the defendant acted with intent to promote or assist the commission of the offense by Paul R. Colella, by encouraging, directing, aiding, attempting to aid, to commit the offense of causing the death of Michael Lavesphere and David Ray Taylor.

The State thus accepted the burden of proving that appellant acted with the intent to promote or assist the commission of the offense and that she encouraged, directed, aided, or attempted to aid Paul Colella cause the victims' deaths.

The State originally filed a brief in which it conceded error and prayed for appellant's acquittal. We subsequently granted the State permission to file a substitute brief. In the substitute brief, the State argues that the jury found the following:

1. appellant was not raped;

2. appellant lied about being raped;

3. appellant made up the rape story to cover the fact that Paul had seen her with the three men;

4. Paul had a gun and threatened to kill the men after he found that appellant claimed to have been raped;

5. Paul's motive to kill was based on the claim of rape;

6. appellant was aware of Paul's prior violent acts;

7. appellant knew or reasonably should have known that Paul was going to

kill the men if she continued to lie about being raped;

8. Paul would not have killed the men but for the lie;

9. appellant had a final opportunity to recant the lie when Paul asked her, "Did they do it to you?"

10. appellant knew she was lying and that Paul was going to kill the men but said, "Yes;"

11. appellant fled the scene with Paul and hid in Indiana.

Viewing the evidence in the light most favorable to the State, we cannot conclude that a rational trier of fact could find the essential elements of the crime beyond a reasonable doubt. The evidence is sufficient to support a finding that appellant acted recklessly, but it is not sufficient for a rational jury to find beyond a reasonable doubt that she acted with the intent to promote or assist the offense.

We must grant the State the fact that appellant was not raped, as there was conflicting evidence on that point. However, all the witnesses to appellant's behavior testified that she attempted to dissuade Paul from shooting or even approaching the men. The syllogism the State produces on appeal underscores the fact that the evidence is insufficient to support a finding of intent to promote the offense beyond a reasonable doubt. The State, in its syllogism, states that appellant *knew or reasonably should have known* that Paul was going to kill the men if she continued to lie about being raped. Such a fact establishes that appellant acted recklessly, not with intent to promote or assist the murders of Michael Lavesphere and David Taylor. We sustain appellant's point of error.

We REVERSE the trial court's judgment and ORDER appellant ACQUITTED of the charge of capital murder.