NUMBER 13-00-536-CR

COURT OF APPEALS

THIRTEENTH DISTRICT OF TEXAS

CORPUS CHRISTI

___________________________________________________________________


CLEO CHESTER MCGREW, JR. , Appellant,


v.

THE STATE OF TEXAS , Appellee.

___________________________________________________________________


On appeal from the 377th District Court

of Victoria County, Texas.

__________________________________________________________________


O P I N I O N

Before Justices Dorsey, Hinojosa, and Rodriguez

Opinion by Justice Rodriguez


A jury found Cleo Chester McGrew, Jr., appellant, guilty of the offense of burglary of a habitation and assessed punishment
at twenty-five years confinement after finding an enhancement paragraph true. SeeTex. Pen. Code Ann. §§12.32, 12.42 (b),
30.02 (Vernon Supp. 2001). By two points of error, appellant contends the evidence is legally and factually insufficient to
support the jury's verdict, and that he received ineffective assistance of counsel. We affirm.

According to evidence produced by the State, on January 18, 1999, Adrian Navarro heard noises in the attached garage of
his home. Navarro investigated the noise and found a man attempting to drag a lawn mower out of the garage. The man
told Navarro that he wanted to borrow the lawn mower, but Navarro refused him permission to use it. Navarro ran inside
the house and his sister called 911. When Navarro returned to the garage, the man had left and the lawn mower was
missing. The first officer on the scene obtained a physical description of the man Navarro saw in the garage, and a physical
description of the missing lawn mower. Thereafter, the officer came into contact with a man who fit Navarro's description.
Navarro was subsequently taken to 1103 Loma Vista, where appellant was temporarily residing and had been detained by
the police. Navarro identified appellant as the person he saw in his garage. Two additional witnesses identified appellant
as the person they saw pushing a lawn mower fitting the description of the mower taken from Navarro's garage, just after it
was reported missing. The lawn mower was never recovered. 

At trial, Navarro identified appellant as the person in his garage. The other two witnesses identified appellant as the person
they saw pushing a mower. That person matched the physical descriptions given to the police by Navarro. Appellant
testified that he did not take the lawn mower.

By his first point of error, appellant claims there is legally and factually insufficient evidence to establish he was the
perpetrator of the burglary. 

When reviewing the legal sufficiency of the evidence, we consider the evidence in the light most favorable to the verdict to
determine whether any rational trier of fact could have found the essential elements of the offense beyond a reasonable
doubt. Jackson v. Virginia, 443 U.S. 307, 319(1979); Johnson v. State, 23 S.W.3d 1, 7 (Tex. Crim. App. 2000); Skinner v.
State, 956 S.W.2d 532, 536 (Tex. Crim. App. 1997). We review the factual sufficiency of the evidence by looking at all of
the evidence without the prism of "in the light most favorable to the prosecution" and set aside the verdict only if it is so
contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust. Johnson, 23 S.W.3d at 11; Clewis
v. State, 922 S.W.2d 126, 135 (Tex. Crim. App. 1996). 

The essential elements of burglary are 1) a person 2) without effective consent of the owner 3) enters a habitation, or
building not open to the public 4) with intent to commit a felony, theft, or assault. Tex. Pen. Code Ann. § 30.02(a) (Vernon
Supp. 2001); Mathew v. State, 839 S.W.2d 110, 111 (Tex. App.--Corpus Christi 1992, no pet.). 

Navarro, who was fifteen years old, testified that around 8:00 p.m. he was at his house and heard something in his garage. 
The garage door had been left open. He opened the door from his house to the garage and saw a black male inside the
garage. The man was wearing a long-sleeved blue jean shirt, a cowboy belt, a "big old buckle," and some cowboy boots. 
He was not sure what color the pants were. When asked to describe the man's facial features, Navarro stated he had a beard
with "a bunch of gray in his hair and his beard." Navarro had never seen the person before, and asked him what he was
doing there. The man asked if he could use his lawn mower to mow a lady's yard. Navarro told him to leave and that he
could not use the mower. The man was heading out of the garage as Navarro went back inside to tell his sister what had
transpired. Navarro saw the man dragging the lawn mower towards the outside of the garage. When Navarro came back to
the garage, the man and the mower were gone. Navarro did not see anybody with the man. Navarro's sister called the
police, who later arrived at the house. Navarro gave the police a description of the man, and described the lawn mower as
having two big wheels in the back and smaller ones in the front. 

The police took Navarro to a location where he identified appellant as the same man who had been in his garage. He did
not have the shirt on, but Navarro recognized the belt buckle. He also recognized the gray in his beard. When the officers
asked Navarro if the man was the person who took the lawn mower, there was only one person to choose from. At trial,
Navarro identified appellant as the man who was in his garage, and who he subsequently identified on the night of the
burglary. Navarro also gave a statement to the police in which he said the suspect was about forty years old, and was
wearing blue jeans and cowboy boots. The statement did not include that the man had a large belt buckle. Nonetheless,
Navarro testified that the man was wearing a noticeable belt buckle. 

Milton Nerio, Jr., who was seventeen years old, lived on Loma Vista. He saw a man running with a lawn mower on the
night in question. That night and at trial, he identified appellant as the man with the lawn mower. The mower had two big
wheels on the back and two little wheels in the front. Nerio remembered that the man was just wearing blue jeans. It was
dark when he saw the man. 

Timetria Barfield, who was twelve years old at the time of appellant's trial, testified she lived on Loma Vista and saw
appellant with a lawn mower from her front porch. The mower had small front wheels, and larger back wheels. Appellant
came out from between two homes or apartments on Loma Vista. It was dark, but she knew it was appellant because she
briefly spoke with him. She said, "Hi, Cleo," and he replied, "Hi, little momma." He was pushing the lawn mower toward
Laurent Street and then a pickup truck stopped, appellant put the mower in the bed of the truck, got in the truck, and the
truck left. Barfield gave a statement in which she claimed she saw appellant with the lawn mower around 7:00 p.m., but
testified at trial that it was around 10:00 p.m. 

Officer Julian Huerta of the Victoria Police Department testified that he spoke with Navarro, who gave him the details of
what happened. According to Officer Huerta, the physical and the clothing description given by Navarro matched that of
the suspect, who Officer Huerta identified as appellant. Navarro told Officer Huerta that the man he observed was about
140 pounds. Navarro described him as a forty year old man. 

When the officer observed appellant, he did not have a shirt on and was not wearing boots, as Navarro had described, but
was wearing jeans and a western belt. He was an adult black male, with a beard, with some gray in it. He was
approximately five foot eleven, and 190 pounds. Officer Huerta estimated his height from a distance. The facial features
matched Navarro's description exactly. When asked if appellant appeared to be forty years old, Officer Huerta replied,
"Probably not." 

Officer Huerta took Navarro to the location where appellant was temporarily residing, and Navarro identified appellant as
the person he observed entering his garage and taking his lawn mower. Navarro made the identification from a distance of
fifteen to twenty feet at around 8:30 p.m. The area was well lit by street lights. According to Officer Huerta, there was
adequate lighting for someone to see a person from that distance. There were no other black individuals standing nearby
when Navarro identified appellant. 

Officer Huerta opined that it would take about ten to twelve minutes to run from from Navarro's house to appellant's
temporary residence on Loma Vista. There was sufficient time for an individual to have traveled by foot from Navarro's
house to appellant's temporary residence. Officer Huerta never came across the lawn mower. 

A document prepared when appellant was booked at the police station indicated he weighed 175 pounds, and was five foot
five inches tall. 

Sergeant William Dubose of the Victoria Police Department testified he heard a radio dispatch that a suspect was running
with a lawn mower towards Loma Vista Street, so he headed to the area. Upon arriving, Sergeant Dubose saw an
individual, Milton Nerio, Jr., in front of a residence. Nerio related information he observed pertaining to the burglary. 
Sergeant Dubose subsequently came into contact with an individual who matched the description given to him by Nerio. 
Information came over the radio from a witness that the suspect's first name was possibly Cleo, and then a lieutenant came
over the radio and asked the dispatcher to check Cleo McGrew, who lived in the area. Thereafter, Sergeant Dubose got an
address of 1103 Loma Vista, proceeded to the address, and came into contact with appellant at that address. Sergeant
Dubose testified that when he first saw the suspect, he appeared to be about five foot six, one hundred and forty pounds,
and had a beard with lots of gray in it. He was wearing blue jeans, a cowboy belt, no shoes, and no shirt. On
cross-examination, however, Sergeant Dubose testified as follows:

Q. He didn't weigh 140 pounds?



A. I don't recall him weighing that much.



Q. He wasn't 40 years old; was he?



A. Apparently not. 

Sergeant Dubose never located the lawn mower. He testified it is not unusual for the police not to recover property in a
burglary. He looked around the area near appellant's temporary residence and found tracks through pea gravel, "coming
from where Mr. Nerio said he saw the individual with the lawn mower." He followed the tracks through the gravel, and
they led almost to 1103 East Loma Vista, where appellant was residing.

Sergeant Dubose testified it would take ten to fifteen minutes to walk from Navarro's house to appellant's temporary
residence. The burglary occurred at about 8:15 p.m. and Sergeant Dubose arrived at appellant's temporary residence at
about 8:30 p.m. Appellant did not appear to be winded or sweaty. Sergeant Dubose opined that there was adequate time for
appellant to have left the Navarro residence, pushed the mower to his temporary residence, dispose of the lawn mower, and
then have time to remove his shirt and boots. 

Appellant testified that he did not steal the lawn mower. 

As appellant notes, there were conflicting testimony regarding the description of the perpetrator. The description of the
suspect's weight varied from less than 140 pounds to 190 pounds. Officer Huerta described the suspect, who he identified
as appellant, as 5' 11" and 190 pounds, but explained his estimation was made from a distance. Navarro described the
suspect as 5' 4" and weighing 140 pounds. Appellant's height according to the booking information was 5' 5," only one inch
taller than Navarro's description of the suspect. The booking information listed appellant as weighing 175 pounds, falling
in the middle of the various descriptions given as to the suspect's weight. Navarro testified that he primarily based his
identification on the cowboy belt buckle and the suspect's gray beard. Officer Huerta testified appellant matched Navarro's
description and that he had a beard with some gray in it. Sergeant Dubose testified appellant was wearing a cowboy belt
and that he had a beard with lots of gray in it. Contrary to Navarro's description, Nerio, Officer Huerta, and Sergeant
Dubose testified appellant was not wearing a shirt or cowboy boots. Nerio testified the man he saw pushing the mower was
just wearing jeans. Sergeant Dubose testified appellant was wearing jeans without a shirt or shoes. Navarro also described
the suspect as being around forty years old, and Sergeant Dubose testified appellant did not look like he was forty years old. 
Navarro, Nerio, and Barfield all described the lawn mower as having small front wheels, with large wheels in the back. 
The jury is the sole trier of fact and may judge the credibility of witnesses, reconcile conflicts in testimony, and accept or
reject any evidence presented by either side to the case. Chambers v. State, 805 S.W.2d 459, 461 (Tex. Crim. App. 1991);
Bath v. State, 951 S.W.2d 11, 14 (Tex. App.--Corpus Christi 1997, pet. ref'd). Should inconsistent or contradictory
testimony exist, we assume that the discrepancies were resolved in favor of the verdict. Moreno v. State, 755 S.W.2d 866,
867 (Tex. Crim. App. 1988). The State provided evidence that appellant was the man in appellant's garage and dragged the
lawn mower out of the garage. The State also provided evidence showing that appellant pushed the mower near his
temporary residence on Loma Vista. The jury was entitled to resolve the conflicts in the testimony regarding the
description of the suspect in favor of the State. 

Appellant notes that there was no testimony that anyone witnessed him take the lawn mower, and no lawn mower was
found at appellant's temporary residence where he was arrested. In fact, Navarro testified he observed appellant dragging
the lawn mower towards the outside of his garage. As to appellant's complaint that the lawn mower was not found in his
possession and that it was never recovered, the State offered evidence, through Barfield's testimony, that appellant disposed
of the lawn mower before his arrest. Furthermore, proof of burglary may be established by circumstantial evidence. Nelson
v. State, 905 S.W.2d 63, 64 (Tex. App.-Amarillo 1995, no pet.) (citing Garza v. State, 841 S.W.2d 19, 21-23 (Tex.
App.-Dallas 1992, no pet.)). There is no requirement that the State prove the defendant was in possession of the stolen
property at the time of his arrest or that the stolen property was ultimately recovered by authorities. See 20 Tex. Jur. § 923,
p. 90-91 (1982) ("it is not essential to a conviction to prove that the defendant was in possession of the stolen property; his
participation in the crime may be established by other circumstances"); cf. Mabra v. State, 997 S.W.2d 770, 775-76 (Tex.
App.-Amarillo 1999, no pet.) (appellant's presence at the scene, and identification of appellant by witness as fleeing house
after alarm went off was sufficient evidence of guilt of burglary).

Appellant contends that Nerio testified to appellant pushing a lawn mower in a different location than towards his
residence, which conflicted with a written statement he gave to police wherein he stated he "saw a black man pushing a
lawn mower real fast on Loma Vista, going toward Laurent Street." At trial, Nerio indicated appellant was coming up a
street called Nimitz and hit a curb with the mower on Loma Vista. Trial counsel for appellant apparently drew a map and
used it while eliciting this testimony. Nowhere in the record does Nerio state that appellant was not heading towards
appellant's residence. Because the map was not introduced into evidence and is not in the record before us, we have no way
of determining in which direction Nerio testified appellant was heading. Nerio testified he forgot to include in his report
that appellant hit the curb with the mower and that he saw appellant on Nimitz Street. 

Finally, appellant observes that he was the only individual, and the only black individual, shown to Navarro when he made
the identification. In addition, the identification was made after dark, from fifteen to twenty feet away. 

We note that appellant did not object to the admissibility of Navarro's identification of appellant, and he does not challenge
its admissibility on appeal. Rather, he contends that because appellant was the only suspect at the scene, and he was the
only black individual at the scene, the identification will not support his conviction for burglary.

An identification that occurs when police present the victim with a single suspect, inferring that he is the culprit, and then
asking the victim to identify the criminal, is dubious because of its suggestiveness. Navarette v. State, 875 S.W.2d 452, 454
(Tex. App.--Corpus Christi 1994, no pet.). Under certain circumstances, however, such an identification, termed a "one
man show up," is permissible. Garza v. State, 633 S.W.2d 508, 512 (Tex. Crim. App. 1982) (op. on reh'g). We consider
the totality of the circumstances, including the following factors: 1) the opportunity of the witness initially to see the
criminal in the commission of the crime; 2) the amount of attention the witness devoted to observing the criminal; 3) the
accuracy of the description; 4) the witness's level of certainty; 5) the time between the crime and the confrontation of the
suspect in police custody. Manson v. Brathwaite, 432 U.S. 98, 114 (1977); Delk v. State, 855 S.W.2d 700, 705-08 (Tex.
Crim. App. 1993). "These and other pertinent factors are weighed against the 'corrupting effect of the suggestive
identification itself.' " Cantu v. State, 738 S.W.2d 249, 252 (Tex. Crim. App. 1987) (quoting Manson, 432 U.S. at 114).

In this case, Navarro testified he saw appellant in his garage and spoke to him. He identified numerous descriptive features
of appellant and his clothing, some of which were corroborated by other witnesses. Navarro never deviated from his
identification of appellant as the person who was in his garage and who took his lawn mower. Navarro identified appellant
as the suspect on the night the incident transpired. Though it was dark when he made the identification, there was testimony
that there was adequate lighting. That appellant was the only person presented to Navarro, and that he was the only black
individual present, were issues of credibility for the jury to resolve. 

Appellant further notes that three of the witnesses who identified him were under the age of eighteen. There is no minimum
age at which a child is considered a competent witness. Upton v. State, 894 S.W.2d 426, 429 (Tex. App.--Amarillo 1995,
pet. ref'd); Berotte v. State, 992 S.W.2d 13, 17-18 (Tex. App.--Houston [1st Dist.] 1997, no pet.). The witnesses respective
ages may or may not have affected their credibility before the jury. We will not, however, second-guess the fact-finder's
resolution of issues of credibility. Navarro identified appellant as the man who was in his garage and took his lawn mower.
Nerio and Barfield identified appellant as the man pushing a lawn mower, only blocks from Navarro's home, with large
wheels in the back and small ones in the front, as Navarro described the stolen lawn mower. Sergeant Dubose observed
wheel tracks leading almost to appellant's temporary residence.

Considering the evidence in the light most favorable to the verdict, a rational trier of fact could have found appellant was
the perpetrator of the offense beyond a reasonable doubt. Furthermore, we cannot say the verdict is so contrary to the
overwhelming weight of the evidence as to be clearly wrong and unjust. Appellant's first point of error is overruled. 

By his second point of error, appellant contends his trial counsel was ineffective in failing to preserve error on the trial
court's failure to include a charge on the lesser included offenses of criminal trespass (1) and theft. (2) Appellant contends he
was entitled to a charge on these offenses because there was evidence that Navarro's garage had been left open. 

To prevail on a claim for ineffective assistance of counsel, the defendant must show counsel's performance fell below an
objective standard of reasonableness, by identifying acts or omissions showing that counsel's performance was deficient. 
Strickland v. Washington, 466 U.S. 668, 687 (1984); Vasquez v. State, 830 S.W.2d 948, 949 (Tex. Crim. App. 1992). In
addition, the defendant must show there is a reasonable probability that, but for counsel's errors, the outcome of the
proceeding would have been different. Strickland, 466 U.S. at 687; Hernandez v. State, 988 S.W.2d 770, 772 (Tex. Crim.
App. 1999). Our review of trial counsel's performance is highly deferential and we employ a strong presumption that
counsel's conduct constitutes sound trial strategy. Strickland, 466 U.S. at 689; Miniel v. State, 831 S.W.2d 310, 323 (Tex.
Crim. App. 1992). A claim of ineffective assistance of counsel will only be upheld if counsel's ineffectiveness is
affirmatively demonstrated in the record. Ex parte McWilliams, 634 S.W.2d 815, 819 (Tex. Crim. App. 1980). 

We are unable to conclude trial counsel's performance fell below an objective standard of reasonableness in this case
because appellant was not entitled to a lesser included offense instruction on theft or criminal trespass on the basis that the
garage had been left open and was not an enclosed structure. (3) To be entitled to a charge on a lesser included offense, the
lesser included offense must be included within the proof necessary to establish the offense charged, and there must be
some evidence that would permit a rational jury to find that if the defendant is guilty, he is guilty only of the lesser offense. 
Rousseau v. State, 855 S.W.2d 666, 672 (Tex. Crim. App. 1993); Brown v. State, 960 S.W.2d 265, 267 (Tex. App.-Corpus
Christi 1997, no pet.). Here, evidence that the Navarro garage had been left open provides no evidence that would allow a
jury to find appellant guilty only of one of the lesser offenses. 

The precise language of the burglary statute imposes no requirement that a habitation not be open to the public. Rather,
this limitation is expressly limited to a building. See Tex. Pen. Code Ann. § 30.02 (a)(1) (Vernon Supp. 2001) (person
commits burglary if he "enters a habitation, or a building (or any portion of a building) not then open to the public, with
intent to commit a felony or theft"). A "habitation" is a structure that is adapted for the overnight accommodation of people
and includes "(A) each separately secured or occupied portion of the structure. . .; and (B) each structure appurtenant to or
connected with the structure. . . ." Tex. Pen. Code Ann. § 30.01 (Vernon 1994). Unlike a "building," a "habitation" need
not be en enclosed structure. See id. § 30.01 (1), (2). It is well established that a garage that is attached to a house, and
which shares a common wall, is a "habitation" as defined by the penal code. Johnson v. State, 844 S.W.2d 872, 874 (Tex.
App.--Amarillo 1992, no pet.); White v. State, 630 S.W.2d 340, 342 (Tex. App.--Houston [1st Dist.] 1982, no pet.). Texas
courts have even held that an unattached garage falls within the statutory definition of a "habitation," as it is a "structure
appurtenant to" a residence. See Darby v. State, 960 S.W.2d 370, 371 (Tex. App.--Houston [1st Dist.] 1998, pet. ref'd);
Jones v. State, 690 S.W.2d 318, 319 (Tex. App.--Dallas 1985, pet. ref'd).

In this case, it is undisputed that Navarro's garage was a "habitation" as defined in the penal code. It was attached to a
structure adapted for the overnight accommodation of people. Because the garage was a "habitation," evidence that it was
left open could not serve as evidence that appellant did not commit the offense of burglary. Accordingly, evidence that the
garage was open does not provide any evidence that if appellant was guilty, he was guilty only of theft or criminal trespass,
and not burglary. Appellant was not entitled to a charge on theft or criminal trespass on the basis that there was testimony
that the garage had been left open, and trial counsel was not deficient in failing to preserve this issue. (4) Appellant's second
point of error is overruled. 



The judgment of the trial court is AFFIRMED. 



NELDA V. RODRIGUEZ

Justice



Do not publish .

Tex. R. App. P. 47.3.



Opinion delivered and filed

this 23rd day of August, 2001.

1. Criminal trespass is a lesser included offense of burglary. See Day v. State, 532 S.W.2d 302, 306 (Tex. Crim. App.
1975); White v. State, 698 S.W.2d 494, 495 (Tex. App.-Corpus Christi 1985, no pet.). 

2. Theft by possession of stolen property may be a lesser included offense of burglary of a habitation when the State alleges
that the defendant committed theft. Garcia v. State, 571 S.W.2d 896, 898 (Tex. Crim. App. [Panel Op.] 1978); Dixon v.
State, 43 S.W.3d 548, 551 (Tex. App.--Texarkana 2001, no pet.). 

3. Though not raised by trial counsel or appellate counsel, a lesser included offense instruction for criminal trespass may
have been proper on the ground that appellant lacked the intent to commit a felony or theft when he entered the garage. To
be entitled to a criminal trespass charge in a burglary case, there must be some evidence that the defendant entered the
premises unlawfully, but without the intent to commit a felony or theft. White v. State, 698 S.W.2d 494, 496 (Tex.
App.-Corpus Christi 1985, no pet.). As noted, when Navarro asked appellant what he was doing, appellant asked if he
could borrow the lawn mower. 

4. We do not reach the issue of whether trial counsel did not, in fact, preserve any error.