



## MEMORANDUM OPINION

No. 04-10-00261-CR

Charles **DAVIS**,
Appellant

v.

The **STATE** of Texas,
Appellee

From the 437th Judicial District Court, Bexar County, Texas
Trial Court No. 2008CR5393
Honorable Pat Priest, Judge Presiding[1]

Opinion by:     Steven C. Hilbig, Justice

Sitting:        Catherine Stone, Chief Justice
                Phylis J. Speedlin, Justice
                Steven C. Hilbig, Justice

Delivered and Filed:  February 16, 2011

AFFIRMED

Charles Davis was convicted of burglary of a habitation and sentenced as a habitual

offender to twenty-five years in prison.  He appeals the judgment, arguing the evidence is legally

and factually insufficient to support the jury's verdict.  We affirm the judgment.

### BACKGROUND

Davis was accused of burglarizing a home owned by Helen Orr, but the indictment

named Katherine Park, Orr's daughter, as the owner of the property.  Park testified that her

---

[1] Sitting by assignment

mother was 102 years old at the time of trial and suffered from dementia. As a result, Park controlled her mother's affairs, including care of the home. Park testified that on August 29, 2007, she and her mother went shopping. Park gave her mother fifteen dollars to spend, and placed the money in her mother's purse. After shopping, Park drove her mother home and watched her enter the house. Park testified her mother still had all the money. Park also testified about her mother's habits and routines, and told the jury that Orr always hung her purse from a chair in the family room.

Park told the jury her mother's house had been burglarized in the past. She had therefore asked Orr's neighbors, the Garza family, to watch the property for any unusual activity. Park testified that after driving away from her mother's house on August 29, 2007, she received a telephone call from one of the Garzas, telling her that her mother had been robbed. Park returned to the house and met with the police. She went inside and noticed her mother's purse was sitting on the kitchen table. Park told the jury her mother never left her purse on the table. Park looked inside the purse and discovered the fifteen dollars was missing. According to Park, Orr did not have transportation or sufficient time after Park left the house to have spent the money. Park testified she did not know the defendant Charles Davis and had never given him permission to enter the house.

Leonard Garza testified that on August 29, 2007, he was visiting his brother Michael, who lived by Orr. As Leonard got out of his car, he saw Davis riding a bicycle down the street. A few seconds later, when Leonard turned to walk toward his brother's house, he noticed Davis was no longer in view. Leonard looked into Orr's back yard and saw the bicycle there. He told his brother what he had seen and the brothers went to Orr's back yard. Leonard testified he could see Davis inside the house in the kitchen area, but he did not see Orr. When Leonard went

into the house later with the police, Orr's purse was found open on a countertop in the kitchen near where Davis had been. Leonard told the jury Davis appeared nervous when he saw the brothers. Davis came out the back door and told the brothers that he was inside the house to use the restroom. The brothers permitted Davis to leave, but Leonard decided to follow him in his car. Leonard testified Davis got on the bicycle and rode to a pawnshop. Davis entered the pawnshop, came out, and then rode to a convenience store. Davis left the store with a beer in his hand. Davis got on the bicycle again and rode down the street, where he was stopped by police.

Michael Garza testified he lived across the street from Orr. He was aware that Orr suffered from dementia and that Park made all her decisions for her. Michael testified that on August 29, 2007, his brother Leonard came to his house and told him someone was in Orr's back yard. They went to Orr's house and saw a bicycle in the yard. Michael testified there were sliding glass doors in the back of the house and he saw someone inside near the kitchen sink. He did not see Orr. The person then ran out the back door into the sunroom, which was attached to the rear of the house. The brothers confronted the person when he came outside. Michael testified the person said his name was Charles and that he was using the restroom. When Michael told Davis there was a restroom at a convenience store down the street, the person said he worked for Orr. Michael testified he knew Davis did not work for Orr. Both brothers identified Davis as the person inside Orr's house. After Davis left on his bicycle with Leonard following him, Michael called the police. Michael was also talking on a cell phone to Leonard, and Michael relayed Davis's movements to the police.

San Antonio Police officer Donnie Lee Milewski testified he was working on a burglary task force when he received a dispatch concerning a burglary. He was directed to a location where he saw an individual riding a bicycle and carrying a can of beer. A car was following the

rider, later identified as Davis, and the driver was directing the officer's attention to the bicycle rider. Officer Milewski stopped Davis and arrested him. Officer Milewski testified Davis was carrying a box cutter, a screwdriver and a pair of gloves, and told the jury these were common tools used by burglars. Davis also had twelve or thirteen dollars on him when he was arrested, and Officer Milewski testified the can of beer Davis had would have cost "a couple of dollars." Davis stipulated a fingerprint belonging to him was found on a coffee cup in the kitchen of Orr's house.

The jury found Davis guilty of burglary and the trial court imposed a sentence of twenty-five years. Davis appeals, contending the evidence was legally and factually insufficient to prove he entered the habitation without the effective consent of the owner.

## APPLICABLE LAW

After appellant's brief was filed, the Court of Criminal Appeals issued its opinion in *Brooks v. State*, 323 S.W.3d 893 (Tex. Crim. App. 2010). Although only four judges joined in the plurality opinion, a majority of the judges agreed it is no longer appropriate to conduct a separate review for factual sufficiency in criminal appeals. *Brooks*, 323 S.W.3d at 912; *id*. at 926 (J. Cochran concurring). Accordingly, we will review the evidence to determine whether it is legally sufficient under the *Jackson v. Virginia* standard. *Brooks*, 323 S.W.3d at 912. Under that standard, we review the evidence for legal sufficiency by looking at all of the evidence in the light most favorable to the verdict to determine whether any rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. *Prible v. State*, 175 S.W.3d 724, 729-30 (Tex. Crim. App.), *cert. denied*, 546 U.S. 962 (2005). We resolve any inconsistencies in the testimony in favor of the verdict. *Curry v. State*, 30 S.W.3d 394, 406 (Tex. Crim. App. 2000). "Circumstantial evidence is as probative as direct evidence in establishing the

guilt of an actor, and circumstantial evidence alone can be sufficient to establish guilt." *Hooper v. State*, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007). The standard of review is the same for cases relying on either direct or circumstantial evidence. *Id.* "Each fact need not point directly and independently to the guilt of the appellant, as long as the cumulative force of the incriminating circumstances is sufficient to support the conviction." *Id.*

The essential elements of the offense of burglary are: 1) a person; 2) intentionally or knowingly; 3) enters a habitation; 4) without the effective consent of owner and 5) either enters with intent to commit theft or enters and commits or attempts to commit a theft. *See* TEX. PENAL CODE ANN. § 30.02 (a)(1),(3) (West 2003); *Matthews v. State*, 839 S.W.2d 110, 111 (Tex. App.—Corpus Christi 1992, no pet.)(stating essential elements when entry was with intent to commit theft); *Villanueva v. State*, 711 S.W.2d 739, 740 (Tex. App.—San Antonio 1986)(stating essential elements when entry occurred and actor attempted to commit or committed theft), *pet. ref'd*, 725 S.W.2d 244 (Tex. Crim. App. 1987).

### DISCUSSION

Davis argues the evidence is legally insufficient to prove he entered the habitation without the effective consent of the owner. The indictment and jury charge alleged Park was the owner of the property. Davis concedes Park is an "owner," as the word is used in the Penal Code, and that Park did not consent to Davis's entry. *See* TEX. PENAL CODE ANN. § 1.07(a)(35) (West Supp. 2010) ("owner" includes person who has a greater right to possession of the property than the actor). However, he argues that Orr was also an owner, that the evidence implies Orr gave him permission to enter, and the State did not rebut the implication. We disagree. There is no direct evidence that Orr gave Davis permission to enter the house. The Garzas testified Davis told them he was in the house to use the restroom and that he worked for

Orr. However, neither witness testified Davis said Orr gave him permission to enter the house. Further, both Michael Garza and Park testified that Davis did not work for Orr. The jury was free to conclude there was no reason for Davis to lie if Orr had given him permission to enter the home. Finally, even if Orr had given Davis permission to enter the home, a rational jury could conclude such permission was not for the purpose of committing theft while in the residence. *See* TEX. PENAL CODE ANN. § 1.07 (a)(19) (West Supp. 2010) (consent is not effective if induced by fraud). There is sufficient evidence to support the jury's implicit rejection of Davis's contention that Orr gave him effective consent to enter her home.

Park testified she did not give Davis permission to enter her mother's house. Orr's purse was found open, not in its usual location, and with fifteen dollars missing from it. Davis was seen in the house near where the open purse was later found; he gave what the jury could infer was a false excuse, and was found in possession of thirteen dollars soon after leaving Orr's property. A rational jury could have found all the essential elements of the offense beyond a reasonable doubt. We therefore affirm the trial court's judgment.

Steven C. Hilbig, Justice

Do Not Publish