NO.
12-06-00280-CR

 

IN THE COURT OF APPEALS

 

TWELFTH COURT OF APPEALS DISTRICT

 

TYLER, TEXAS

 

 

JAMES YOUNG,      §          APPEAL
FROM THE 241ST

APPELLANT

 

V.        §          JUDICIAL
DISTRICT COURT OF

 

THE STATE OF TEXAS,

APPELLEE   §          SMITH
COUNTY, TEXAS

 




 
 
 
 
 
 
 
 
 
 
 
 
 
 
 


 

 



OPINION

            James Young
appeals his conviction for possession of child pornography, for which he was
sentenced to imprisonment for ten years. 
In three issues, Appellant argues that the evidence was insufficient to
support the jury’s verdict and that the trial court erred in its admission of
certain evidence.  We affirm.

Background

            Appellant
was charged by indictment with possession of child pornography.[1]  Appellant pleaded “not guilty,” and the
matter proceeded to jury trial.  








            C.Y.,
Appellant’s daughter, who was sixteen years old at the time of trial, testified
as the State’s first witness.  C.Y.
testified that she smoked marijuana and methamphetamine with Appellant.  C.Y. stated that she and her father’s friend,
Dusty Slayton, would smoke methamphetamine while Appellant took pictures of
them.  C.Y. further testified that
Appellant would take her to Wal-Mart and take photographs of her in negligee
tops.  Moreover, C.Y. stated that while
smoking methamphetamine on one occasion, Appellant had her pose in her
underwear, with her finger between her legs touching her vagina while Appellant
took her picture.  This picture was
admitted into evidence as an exhibit. 
C.Y. further stated that Appellant pierced her clitoris.  C.Y. testified that she ultimately ran away
from home because she could not take it anymore.  C.Y. admitted that she had previously denied
that Appellant had taken any pornographic pictures of her and pierced her
clitoris because Appellant was her father and she did not want to lose him.

            Dusty
Slayton testified next on the State’s behalf. 
Dusty testified that she and her husband, Brad Slayton, and their
children lived with Appellant and C.Y. for a period of time.  Dusty further testified that she used
marijuana and methamphetamine with C.Y. 
Dusty stated that during that time Appellant would get high on
methamphetamine and take pictures.  Dusty
further stated that Appellant had taken provocative pictures of her and had
discussed putting such pictures on a pornographic web site.  Dusty testified that after she and Brad
ceased living with Appellant, she became aware of pornographic pictures of C.Y.
that were stored in a safe in their possession. 
Dusty testified that neither she nor, to the best of her knowledge, Brad
took those pornographic pictures. 
Moreover, Dusty stated that Appellant told her that he could pierce her
clitoris for her because he had pierced C.Y.’s. 
Dusty further stated that she had pleaded guilty to sexual assault and,
as a result, would soon be incarcerated.

            John
Michael Penny testified as the State’s next witness.  Penny testified that he was C.Y.’s
godfather.  He stated that, at the
request of Appellant’s ex-wife, Debbie, he looked at some computer discs he
thought belonged to Appellant.[2] 
Penny testified that the discs were found in a box that belonged to Appellant.  Penny further testified that upon opening the
discs in his computer, he observed an image of Appellant kissing C.Y. in a
manner he found to be inappropriate. 
Penny stated that he did not take the pictures he found on the
discs.  Penny further stated that he had
tried to take C.Y. to Oklahoma because she no longer wished to be with
Appellant because of the things he was doing to her.  Penny admitted that he had previously been
convicted of manslaughter.

            Gary
Wayne Simmons testified next on the State’s behalf.  Simmons testified that he took illegal drugs
with Appellant and C.Y.  Simmons further
testified that he observed Appellant and C.Y. engage in what he considered to
be inappropriate touching.  Simmons
stated that he observed Appellant take photographs of many people, including
C.Y., but did not state that any of the photos he saw taken were
pornographic.  Simmons further stated
that he did not take any pictures of C.Y. 
Simmons testified that C.Y. ran away to his house and he took her to the
Children’s Advocacy Center.

            Richard
Vogle testified as the State’s next witness. 
Vogle stated that Appellant was his best friend.  Vogle further stated that he never saw
Appellant take any inappropriate pictures of C.Y.  Vogle testified that he found some
inappropriate pictures of C.Y. on a computer that he thought belonged to
Appellant.  Vogle denied that the
computer the prosecuting attorney showed him was Appellant’s computer.  Vogle stated that he overheard a coworker say
that there were pornographic photos contained on Appellant’s computer.  Vogle further stated that he did not know who
had access to Appellant’s computer other than Appellant.

            Smith
County Sheriff’s Detective Anthony Dana testified next on the State’s
behalf.  Dana testified that a tattoo/piercing
shop employee told him that he performed a tongue piercing on C.Y.  Dana further testified that this same person
told him that they would have required a separate parental consent to perform a
clitoral piercing on a minor and that they had no record of any such consent
form pertaining to C.Y. for a clitoral piercing.  Dana testified that he went to Appellant’s
residence pursuant to a search warrant and that Appellant’s wife provided him
the CDs he sought pursuant to the warrant. 
Dana stated that he located magazines under Appellant’s bed depicting
young girls.  A picture of these
magazines and also the magazines were admitted into evidence over Appellant’s
objection.  Dana confirmed that the
magazines entitled “Orient 18, Sweet and Young,” “Spring Break Scandals” and a
special issue of “Tight, All 18, All Teeny, All Eager to Show and Tell” were
each found underneath Appellant’s bed. 
Dana testified that Appellant contacted the authorities to report C.Y.
as a runaway.  Dana further testified that
Dusty Slayton, Brad Slayton, Debbie Young, and C.Y. each had access to the
computer he found in Appellant’s travel trailer.  Dana stated that C.Y. and Dusty Slayton told
him about the pictures at issue.  Dana
further stated that Appellant told him that he intended to give the discs
containing the photographs at issue to the authorities though Debbie Young
ultimately did so.  Dana testified that
C.Y. told him that Appellant took nude photos of Debbie Young, but that he
never was able to locate any such photographs. 
Following Dana’s testimony, the State rested.

            Glen
Thomas Ramirez testified as Appellant’s first witness.  Ramirez testified that he knew Dusty and Brad
Slayton and their children and that they had lived with him for a period of
time.  Ramirez further testified that
when the Slaytons moved out of his home, they left behind a safe.  Ramirez stated that he opened the safe and
found photographs of Dusty, Brad, and C.Y. 
Ramirez further stated that he and his wife contacted the sheriff’s
department to come get the pictures. 
Ramirez identified several pictures that he discovered in the safe,
among them pictures he agreed depicted 
C.Y. engaged in sexual conduct.[3]

            Appellant
next called Kim Waits to testify, but the trial court limited her testimony
pursuant to Texas Rule of Evidence 613. 
Before the jury, Waits testified that C.Y. appeared slightly nervous at
being interviewed by Child Protective Services, but seemed “okay otherwise.”  The trial court similarly limited Sabrina
Gordon’s testimony pursuant to Rule 613. 
Gordon testified that Appellant and C.Y. spent time with her during the
summer of 2005.  Gordon further testified
that she never knew of Appellant or C.Y. drinking hard liquor or smoking “ice.”  Gordon stated that she had no fear for her
three daughters in having Appellant around them.[4]

            Appellant
next called C.Y. to testify.  C.Y. denied
speaking with Gordon about the allegations against Appellant and could not
recall speaking with Waits.  C.Y.
testified that she did not remember the detective who investigated the
case.  C.Y. again stated that she
originally denied that Appellant took the pictures at issue, but that she later
changed her story.  During the
prosecuting attorney’s examination, C.Y. testified that Appellant took the
pictures comprising, among others, the State’s Exhibits 82 and 85.[5]  C.Y. confirmed that the pictures in these
exhibits were of her and were taken at her house in Smith County.

            Debbie
Young testified next on Appellant’s behalf. 
Debbie testified that Appellant only used methamphetamine twice, both
times with her, and never used any drugs around C.Y.  Debbie further testified that Penny gave her
the four discs at issue.  Debbie stated
that she looked at the pictures on the discs and held the discs for
police.  Debbie further stated that she
removed the discs from her purse and gave them to Detective Dana.  Debbie testified that when she showed
Appellant the pictures she found on the discs, Appellant was livid and in
tears.  Debbie further testified that the
pictures from the discs contained pornographic images of C.Y. and that she had
the discs for about eleven days before turning them over to police.

            Jessie
Seigfried testified as Appellant’s next witness.  Seigfried testified that C.Y. told him she
had her clitoris professionally pierced and that nothing was going on at home.

            Thereafter,
Appellant testified on his own behalf.  Appellant
stated that he had smoked methamphetamine one time, but that he did not like it
and was not a “druggie.”  Appellant
denied that he had taken pornographic pictures of C.Y. or pierced her
clitoris.  Appellant explained that there
was bad blood between him and Penny because Appellant helped Penny’s wife and
children get away from him.  Appellant
also testified that Penny had stolen a handgun from him as well as secreted
C.Y. from him.  Appellant stated that
Vogle had hard feelings against him because Appellant barred him from
participating in shows put on by Appellant’s show group.  Appellant further stated that he and Simmons
intended to start a small engine repair service, but that the business
relationship deteriorated when Appellant caught Simmons and Simmons’s wife
smoking methamphetamine with an infant between them.  Appellant testified that Debbie attempted to
buy a travel trailer from Simmons, but that the deal fell through with Simmons
neither delivering the trailer nor returning Debbie’s $1,700.00 payment.  Appellant further testified that he offered
to go with Detective Dana to retrieve two other computers of his in Emory,
Texas.  Appellant denied that he had
intended or had given any consideration to setting up a pornographic
website.  On cross examination, Appellant
admitted that some of the pictures of C.Y. were pornographic, but further
denied any wrongdoing.

            Ashley
Young testified as Appellant’s next witness. 
Ashley testified that Appellant was her uncle and C.Y. was her
cousin.  Ashley further testified that
C.Y. asked her to take pornographic pictures with her.  Ashley stated that C.Y. told her that her
claim that Appellant had taken nude pictures of her was a lie and that she said
it because she was mad at Appellant. 
Ashley further stated that C.Y. told her that she was going to put
Appellant away so that she could get away from him.  Thereafter, Appellant rested. 

            The
State called Detective Dana in rebuttal. 
Through Dana, the State admitted photographs of the contents of a duffle
bag.  The subject matter of these
photographs included magazines, condoms, flavored personal lubricant, and a
penis pump.  These items had been the
subject of Dana’s testimony given during the State’s case in chief.  At the conclusion of Dana’s testimony, both
parties closed and the case was submitted to the jury.

            Following
deliberation, the jury found Appellant guilt of possessing child
pornography.  The matter proceeded to a
trial on punishment after which the jury assessed Appellant’s punishment at
imprisonment for ten years and a ten thousand dollar fine.  The trial court sentenced Appellant
accordingly, and this appeal followed.

 

Evidentiary
Sufficiency

            In
his first issue, Appellant argues that the evidence is legally insufficient to
support the jury’s verdict.  In his
second issue, Appellant argues that the evidence is factually insufficient to
support the jury’s verdict. 
Specifically, Appellant argues that there is not sufficient evidence
that he possessed the photographs at issue.

Legal Sufficiency

            Legal
sufficiency is the constitutional minimum required by the Due Process Clause of
the Fourteenth Amendment to sustain a criminal conviction.  See Jackson v. Virginia, 443
U.S. 307, 315-16, 99 S. Ct. 2781, 2786-87, 61 L. Ed. 2d 560 (1979); see also
Escobedo v. State, 6 S.W.3d 1, 6 (Tex. App.– San Antonio
1999,  pet. ref’d).  The standard for reviewing a legal
sufficiency challenge is whether any rational trier of fact could have found
the essential elements of the offense beyond a reasonable doubt.  See Jackson, 443 U.S. at 320,
99 S. Ct. at 2789; see also Johnson v. State, 871 S.W.2d 183, 186
(Tex. Crim. App. 1993).  The evidence is
examined in the light most favorable to the verdict.  See Jackson, 443 U.S. at 320,
99 S. Ct. at 2789; Johnson, 871 S.W.2d at 186.  A successful legal sufficiency challenge will
result in rendition of an acquittal by the reviewing court.  See Tibbs v. Florida, 457 U.S.
31, 41–42, 102 S. Ct. 2211, 2217–18, 72 L. Ed. 2d 652 (1982).

            To
support a conviction for possession of child pornography, the evidence must
support that the accused knowingly or intentionally possessed visual material
that visually depicts, and which the accused knows visually depicts, a child
younger than eighteen years of age at the time the image of the child was made
who is engaging in sexual conduct.  See
Tex. Penal Code Ann. §
43.26(a).  “Sexual conduct” means actual
or simulated sexual intercourse, deviate sexual intercourse, sexual bestiality,
masturbation, sado-masochistic abuse, or lewd exhibition of the genitals, the
anus, or any portion of the female breast below the top of the areola.  Tex.
Penal Code Ann. §§ 43.25, 43.26(2)(b)(2) (Vernon 2003).

            Be
it by direct or circumstantial evidence, the State must establish that the
accused’s connection with the contraband was more than just fortuitous.  Brown v. State, 911 S.W.2d 744,
747 (Tex. Crim. App. 1995).  When the
contraband is not found on the accused’s person or is not in the accused’s
exclusive possession, additional facts must affirmatively link the accused to
the contraband.  See Jones v. State,
963 S.W.2d 826, 830 (Tex. App.–Texarkana 1998, pet. ref’d).  The affirmative link ordinarily emerges from
an orchestration of several factors and the logical force they have in
combination.  Id.[6]

            Appellant
concedes that there is evidence to support that Appellant took the pictures of
C.Y at issue.  However, Appellant argues
that while such evidence supports manufacture or production, it does not
support that he possessed the visual material at issue.  We disagree. 
The term “visual material” means either (a) any film, photograph,
videotape, negative, or slide or any photographic reproduction that contains or
incorporates in any manner any film, photograph, videotape, negative, or slide
or (b) any disk, diskette, or other physical medium that allows an image to be
displayed on a computer or other video screen and any image transmitted to a
computer or other video screen by telephone line, cable, satellite
transmission, or other method.  Tex. Penal Code Ann. § 43.26(b)(3)
(Vernon 2003).

            In
the case at hand, C.Y. testified that Appellant took the pictures of her
comprising, among others, the State’s exhibit 85.  Exhibit 85 contains a picture that depicts
C.Y., who is not wearing underwear in the picture, with her finger touching her
vagina.  In this picture, C.Y. appears to
be masturbating.[7]  While the
record is not clear whether Appellant’s camera was digital or film based,
regardless of whether the aforementioned picture in Exhibit 85 was captured on
film or a disk of some sort, it amounted to visual material.  See Tex.
Penal Code Ann. § 43.26(b)(3). 
Since, according to C.Y.’s testimony, Appellant took this picture, among
others, it follows that he intentionally possessed the camera containing this
visual material depicting C.Y. engaged in sexual conduct.  

            Examining
the aforementioned evidence in the light most favorable to the verdict, we
conclude that the jury could have determined beyond a reasonable doubt that
Appellant possessed visual material that visually depicts a child younger than
eighteen years of age who is engaging in sexual conduct.  Therefore, we hold that the evidence was
legally sufficient to support the verdict. 
Appellant’s first issue is overruled.

Factual Sufficiency

            Turning
to Appellant’s contention that the evidence is not factually sufficient to
support the jury’s verdict, we must first assume that the evidence is legally
sufficient under the Jackson standard.  See Clewis v. State, 922 S.W.2d
126, 134 (Tex. Crim. App. 1996).  We then
consider all of the evidence weighed by the jury that tends to prove the
existence of the elemental fact in dispute and compare it to the evidence that
tends to disprove that fact.  See
Santellan v. State, 939 S.W.2d 155, 164 (Tex. Crim. App. 1997).  Although we are authorized to disagree with
the jury’s determination, even if probative evidence exists that supports the
verdict,  see Clewis, 922
S.W.2d at 133, our evaluation should not substantially intrude upon the jury’s
role as the sole judge of the weight and credibility of witness testimony.  Santellan, 939 S.W.2d at
164.  Where there is conflicting
evidence, the jury’s verdict on such matters is generally regarded as
conclusive.  See Van Zandt v. State,
932 S.W.2d 88, 96 (Tex. App.– El Paso 1996, pet. ref’d).  Ultimately, we must ask whether a neutral
review of all the evidence, both for and against the finding, demonstrates that
the proof of guilt is so obviously weak as to undermine our confidence in the
jury’s determination, or the proof of guilt, although adequate if taken alone,
is greatly outweighed by contrary proof. 
Johnson v. State, 23 S.W.3d 1, 11 (Tex. Crim. App. 2000); see
also Watson v. State, 204 S.W.3d 404, 417 (Tex. Crim. App.
2006) (evidence is factually insufficient only when reviewing court objectively
concludes that the great weight and preponderance of the evidence contradicts
the verdict).

            We
have reviewed the record in its entirety. 
As Appellant notes, there is testimony, including Appellant’s, that
contradicts C.Y.’s account that Appellant took the picture, among others, of
her masturbating.  Yet we iterate that
our evaluation should not substantially intrude upon the jury’s role as the
sole judge of the weight and credibility of witness testimony, see Santellan,
939 S.W.2d at 164, and where there is conflicting evidence, the jury’s verdict
on such matters is generally regarded as conclusive.  See Van Zandt, 932 S.W.2d at
96.  Our review of the record as a whole,
with consideration given to all of the evidence, both for and against the jury’s
finding, has not revealed to us any evidence that causes us to conclude that
the proof of guilt is so obviously weak or is otherwise so greatly outweighed
by contrary proof as to render Appellant’s conviction clearly wrong or
manifestly unjust.  Therefore, we hold
that the evidence is factually sufficient to support the trial court’s
judgment.  Appellant’s second issue is
overruled.

 

Admission of
Evidence

            In
his third issue, Appellant contends that the trial court, in several instances,
improperly admitted irrelevant and highly prejudicial evidence against
him.  Specifically, Appellant argues that
the trial court erred in admitting the following evidence:  (1) testimony that Appellant used or
possessed methamphetamine; (2) testimony that Appellant allowed or caused C.Y.
to have her clitoris pierced; and (3) testimony that Appellant had a sexual
assault charge pending against him. 
Appellant further contends that the trial court erred in admitting
exhibits consisting of the shell of a nonfunctioning computer and photos of the
contents of a duffle bag, namely magazines and other sexual items.

Testimonial Evidence

            The
reporter’s record in the instant case contains nearly six hundred fifty pages
and more than ninety exhibits.  Appellant’s
arguments concerning the aforementioned testimonial evidence are not
accompanied by citations to the record indicating where the allegedly improper
testimony was first elicited or where Appellant’s timely and specific objection
to such evidence can be found.  See Tex. R. App. P. 38.1(h).  We are not required to search the record in
its entirety to determine whether Appellant preserved error in each instance
and whether Appellant’s objection comports with the various contentions raised
in his third issue.  See, e.g., Powell
v. State, No. 12-98-00049-CR, 2003 WL 23096998, at *10 (Tex. App.–Tyler
Dec. 31, 2003, pet. ref’d) (mem. op. on remand, not designated for
publication).  As such, with regard to
his complaints pertaining to the aforementioned testimony, Appellant has waived
the error, if any, pertaining to the admissibility of such testimonial
evidence.  See Tex. R. App. P. 38.1(h).  

Exhibit of Nonfunctioning Computer

            In
his complaint concerning the admission of the shell of a nonfunctioning
computer as an exhibit, Appellant similarly fails to provide record citations
sufficient to allow us to determine whether Appellant properly preserved the
alleged error.  Id.  Appellant initially objected to the admission
of this exhibit because it was “not properly proven up.”  The trial court admitted the exhibit
conditionally.  Appellant has not
provided in his brief any record citation to where he later objected to the
conditional admission of this exhibit.  See
Heidelberg v. State, 36 S.W.3d 668, 673 (Tex. App.–Houston [14th
Dist.] 2001, no pet.); Lookingbill v. State, 855 S.W.2d 66, 70
(Tex. App.–Corpus Christi 1993, writ ref’d). 
Moreover, Appellant’s objection that the exhibit was “not properly
proven up” does not comport with his argument on appeal.  See Broxton v. State,
909 S.W.2d 912, 918 (Tex. Crim. App. 1995). 
Therefore, Appellant has waived error, if any, pertaining to the
admission of this evidence. 

Pictures of Contents of Duffle Bag

            We
finally consider Appellant’s argument that the trial court erred in admitting
Exhibit 88, which contained photographs taken of the contents of a duffle bag
consisting of magazines and other sexual items.[8]  We review the trial court’s decision to admit
evidence for abuse of discretion.  See
Prystash v. State, 3 S.W.3d 522, 527 (Tex. Crim. App. 1999). 

            “Relevant
evidence” means evidence having any tendency to make the existence of any fact
that is of consequence to the determination of the action more probable or less
probable than it would be without the evidence. 
Tex. R. Evid 401.  Evidence that is not relevant is
inadmissible.  Tex. R. Evid. 402. 
Although relevant, evidence may be excluded if its probative value is
substantially outweighed by the danger of unfair prejudice, confusion of the
issues, or misleading the jury, or by considerations of undue delay, or
needless presentation of cumulative evidence. 
Tex. R. Evid. 403.

            Magazines

            We
first consider the three pictures of magazines contained in Exhibit 88.  In order to satisfy its burden of proof, the
State was required to demonstrate that the pictures at issue depicted a child
engaging in “sexual conduct.”  See Tex. Penal Code Ann. §
43.26(a)(1).  “Sexual conduct” includes “lewd
exhibition of the genitals.”  See Tex. Penal Code Ann. §§ 43.25,
43.26(2)(b)(2).  When a child is the
subject of a photograph, lewdness is not to be considered a characteristic of
the child, but rather as a characteristic of the photograph itself.  See Alexander v. State, 906
S.W.2d 107, 110 (Tex. App.–Dallas 1995, no pet.).  Whether the content of a photograph
constitutes a lewd or lascivious exhibition of a child’s genitals depends on
the intent of the photographer.  Id.  

            The
State had previously offered testimony through Detective Dana with regard to
one of the magazines pictured entitled “Hawk.”[9]  That a mag]azine purporting to depict young
girls going wild on Spring Break[10] was found in a duffle bag
underneath Appellant’s bed, when considered in conjunction with C.Y.’s
testimony that Appellant took the picture of her with her vagina exhibited,[11]
is relevant because it tends to make more probable that Appellant’s intent  with regard to this photograph was that C.Y.’s
exhibition of her vagina be of a lewd fashion. 
See Alexander, 906 S.W.2d at 110 (citing United
States v. Wiegand, 812 F.2d 1239, 1244 (9th Cir. 1987)) (lasciviousness
not a characteristic of child photographed but of exhibition photographer sets
up for audience consisting of himself or likeminded pedophiles).  

            Applying
the Rule 403 balancing factors to this case, we first consider how compellingly
the photographs served to make a fact of consequence more or less
probable.  Sarabia v. State,
227 S.W.3d 320, 324 (Tex. App.–Fort Worth 2007, pet. ref’d).  At trial, Appellant contested C.Y.’s
credibility.  The photographs of
magazines depicting young girls, in addition to supporting the “lewd” component
of “sexual conduct,” also tended to show that C.Y.’s testimony was
truthful.  While the notion of a person
receiving any sort of gratification from such a magazine is repugnant, it had
little potential to impress the jury in some irrational way; the activities
suggested by the captions on this magazine are suggestive of the subject matter
depicted in photographs for which Appellant was on trial, that is, it leaves
the impression that the subject matter consists of young girls in sexual
situations.  Appellant's possession of
these magazines, repulsive as it may be, could be construed as less heinous
than the evidence that Appellant took a picture of his fifteen year old daughter
masturbating.  Moreover, the State did
not spend an excessive amount of time developing this evidence.  Finally, the force of the State's need for
the evidence was significant because the State had little more direct evidence
apart from C.Y.’s own testimony with which to answer Appellant's attack on C.Y.’s
credibility.  Therefore, we hold that
the  probative value of the three
photographs of the magazines is not substantially outweighed by the danger of
unfair prejudice.

            Other
“Sexual Items”

            We
finally consider Appellant’s objection that the photographs depicting “other
sexual items,” namely a penis pump, a package of “Wet N Wild” condoms, a bottle
of flavored personal lubricant, and various issues of Playboy® magazine.  Based on our review of the record, with
consideration given to the State’s burden of proof, we cannot conclude that any
of these items have a tendency to make the existence of any fact that is of
consequence to the determination of the action more probable than it would be
without the evidence.  As such, we hold
that the evidence was not relevant and should not have been admitted.  See Tex.
R. Evid. 401, 402.

            As
such, we must determine if the improper admission of this evidence was harmful
to Appellant.  The erroneous admission of
evidence is nonconstitutional error under Texas Rule of Appellate Procedure
44.2(b).  See Tex. R. App. P. 44.2(b); Johnson
v. State, 967 S.W.2d 410, 417 (Tex. Crim. App. 1998); King v.
State, 953 S.W.2d 266, 271 (Tex. Crim. App. 1997). Any
nonconstitutional error that does not affect substantial rights must be
disregarded. Tex. R.App. P. 44.2(b);
Johnson v. State, 43 S.W.3d 1, 4 (Tex. Crim. App. 2001).  A substantial right is affected when the
error had a substantial and injurious effect or influence in determining the
jury’s verdict. See King, 953 S.W.2d at 271 (citing Kotteakos
v. United States, 328 U.S. 750, 776, 66 S. Ct. 1239, 1253, 90 L. Ed.
1557 (1946)).  In making this
determination, we review the record as a whole. 
See Johnson v. State, 967 S.W.2d at 417.  The presence of overwhelming evidence of
guilt, though only one factor in the analysis, plays a determinative role in
resolving the issue.  Motilla v.
State, 78 S.W.3d 352, 356–57 (Tex. Crim. App. 2002).  Other factors relevant to the harm analysis are
the character of the alleged error and how it might be considered in connection
with other evidence in the case and whether the State emphasized the
error.  Id. at 355–56.  We may also consider the jury instructions,
the State's theory and any defensive theories, closing arguments, and even voir
dire, if applicable. Id.

            In the case at hand, the State’s case
against Appellant was strong as C.Y.’s testimony, though contradicted, was
compelling.  There was also a great deal
of circumstantial evidence in support of the State’s case.  The character of the error and how it might
be considered in connection with the other evidence also militate against
harm.  While the erroneously admitted
evidence was irrelevant and somewhat prejudicial, it was not misleading or
confusing.  Finally, the State did not
emphasize the error.  The exhibit at
issue consists of eight pictures on a single page.  With regard to the pictures of the Playboy
magazines, little more than the name of the magazine is discernible.  With regard to the three pictures of flavored
personal lubricant, two are out of focus, while the bottle in the third picture
contains a label no more graphic than many of the other exhibits comprising
hundreds of pictures the jury saw over the course of trial.  Moreover, the picture of the penis pump is
rather benign.  But for the previous
testimony concerning Appellant’s possession of such a penis pump, it is
reasonable to conclude that the average viewer would not know what the item
pictured was.  Finally, the State made
only a fleeting reference to the penis pump in its closing argument during the
guilt-innocence phase[12] and no further reference to any of the
pictures in the exhibit at issue during its closing argument during the
punishment phase.

            We
conclude that, in the context of the entire case against Appellant, the
admission of the  aforementioned pictures
of “other sexual items” did not have a substantial or injurious effect on the
jury’s verdict and did not affect Appellant’s substantial rights.  See King, 953 S.W.2d at
271.  Thus, we disregard the error.  See Tex.R.App.
P. 44.2(b).  Appellant’s third
issue is overruled.

 

Disposition

            Having
overruled Appellant’s first, second, and third issues, we affirm
the trial court’s judgment.

 

 

 

                                                                                                     JAMES T. WORTHEN    

                                                                                                                 Chief Justice

 

 

Opinion
delivered November 30, 2007.

Panel consisted of Worthen,
C.J., Griffith, J., and Hoyle, J.

 

 

 

 

 

 

 

 

 

 

 

(PUBLISH)











[1] See Tex.
Penal Code Ann. § 43.26(a) (Vernon 2003).





[2]
Penny further stated that Debbie had expressed concern to him that Appellant
was taking inappropriate photos of C.Y.





[3]
Among the pictures Ramirez identified, State’s exhibit 82 contains three
pictures of C.Y. with her breasts exposed, while State’s exhibit 85 contains a
picture of C.Y., who is not wearing underwear, with her finger touching her
vagina.  Both exhibits 82 and 85 were
admitted into evidence.





[4] Gordon was later recalled and testified that
C.Y. had discussed her situation with Gordon.





[5]
See n. 3.





[6]
The list of nonexclusive factors that may be considered when evaluating
affirmative links is set forth in Lassaint v. State, 79 S.W.3d
736, 740–41 (Tex. App.–Corpus Christi 2002, no pet.). 





[7] There is no statutory definition of “masturbation,”
so it should be given its ordinary meaning. 
See McGee v. State, 804 S.W.2d 546, 547 (Tex. App.–Houston
[14th Dist.] 1991, no pet.); Morales v. State, No.
05-98-00255-CR, 1999 WL 185034, at *3 (Tex. App.–Dallas Apr. 6, 1999, pet. ref’d)
(not designated for publication).  “Masturbation
is defined as “[e]xcitation of the genital organs ... by manual contact or
means other than sexual 

Footnote continued.

 

intercourse.”  The American Heritage Dictionary 771
(2nd College ed. 1982); see also Morales, 1999 WL 185034, at *3
(citing Webster's New Universal
Unabridged Dictionary 1109 (2nd ed. 1983)) (defining masturbation as “genital
self-excitation, usually by manipulation; auto-eroticism: also called
self-abuse, onanism”). 

 

 

 





[8]
Exhibit 88 was admitted through Detective Dana during his rebuttal
testimony.  It contains eight
pictures.  Three of the pictures are of
magazines.  One of the pictures is of a
package of “Wet N Wild” condoms.  Three
of the pictures are of a bottle of flavored personal lubricant, and the last of
these pictures is of a penis pump.





[9] Detective Dana was previously questioned
concerning “Hawk,” which was referred to by its caption, “Spring Break
Scandals.”  The record reflects that the
magazine itself was already admitted as Exhibit 75.  Detective Dana also testified that the duffle
bag contained additional magazines such as “Orient 18, Sweet and Young” and “Tight,
All 18, All Teeny, All Eager to Show and Tell.” 
Appellant has raised no argument on appeal relating to the trial court’s
admission of the testimony concerning his possession of such magazines or the
exhibit comprising the magazines themselves, though he raised objections to
such testimony at trial.  See Johnson
v. State, 803 S.W.2d 272, 291 (Tex.Crim.App.1990), overruled on
other grounds, Heitman v. State, 815 S.W.2d 681, 685 n. 6
(Tex.Crim.App.1991) (party may not successfully challenge evidence admitted
elsewhere without objection); see also Tex.
R. App. P. 38.1(h); Nolan v. State, 102 S.W.3d 231, 236
(Tex. App.–Houston [14th Dist.] 2003, pet. ref’d) (failure to brief issue on
appeal constitutes waiver of issue).  In
the exhibit at issue, the only magazines in question are the aforementioned
issue of “Hawk” and multiple issues of Playboy® magazine. 





[10]
Hawk magazine depicted a young nude female and contained numerous captions on
the cover such as “Air Head C*ck Crammed & Clueless!”, “Spring Break
Scandals, Young Girls Gone Wild!”, and “Shocked to Be Soaked ‘I Can’t Believe
How Wet I Get!’”





[11]
See n. 3.





[12]
During his closing argument, the prosecuting attorney made reference to “the
penis pump and some other stuff” in the context of challenging Appellant’s
credibility regarding his testimony that he had found the various items
contained in the duffle bag in the garbage and brought them home planning to
ultimately dispose of them.